781 F.2d 1370
 14 Collier Bankr.Cas.2d 118, Bankr. L. Rep. P 70,975
In re MANOA FINANCE COMPANY, INC., a Hawaii corp. Debtor.
Charles E. KLENSKE, Trustee in reorganization, Plaintiff-Appellee,
v.
George W.H. GOO; Robert S. Teramoto, et al., Defendants,
and
Hirotoshi Yamamoto, Defendant-Appellant.
 No. 84-2807.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 19, 1985.
Decided Feb. 4, 1986.
 
 Bunnham H. Greeley, James A. Kawachika, Carlsmith, Carlsmith, Wichman & Case, Honolulu, Hawaii, for plaintiff-appellee.
 Hirotoshi Yamamoto, Waianae, Hawaii, pro per.
 Appeal from the United States Bankruptcy Court for the District of Hawaii.
 Before SKOPIL, FLETCHER and ALARCON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Hirotoshi Yamamoto appeals from a partial summary judgment granted by District Judge King sitting as the bankruptcy court. Yamamoto initially claimed we lacked jurisdiction over this appeal and he claims that Judge King should be disqualified from presiding over the adversary proceedings in this case. We affirm the partial summary judgment.
 
 BACKGROUND
 
 2
 Manoa Finance Co. (MFC) is an Hawaiian corporation licensed to do business as an industrial loan company. The State of Hawaii moved successfully in state court to have a receiver appointed due to MFC's violations of Hawaii's Industrial Loan Companies Act. The next day, MFC filed a voluntary petition for Chapter 11 Reorganization in the United States Bankruptcy Court for the District of Hawaii. The bankruptcy judge recused himself, and District Judge King assumed the administration of the estate. The papers in the case were filed in bankruptcy court, though some have district court headings.
 
 
 3
 Klenske was appointed Trustee in Reorganization for MFC and filed a complaint alleging a variety of wrongdoings stemming from transactions involving Yamamoto, other defendants, and MFC and its subsidiaries. Yamamoto filed an answer. Klenske moved for summary judgment on two counts of the complaint and Yamamoto filed a memorandum in opposition. Both counts involve debts owed to MFC by Yamamoto. A hearing was held before Judge King and he granted summary judgment on both counts.
 
 
 4
 The appeal was certified pursuant to Fed.R.Civ.P. 54(b). At oral argument before this court, Yamamoto conceded that he is responsible for the debts in question.
 
 DISCUSSION
 I. APPELLATE JURISDICTION
 
 5
 Klenske claimed in his brief that this court has no jurisdiction to hear this case because it is a direct appeal from a decision of a bankruptcy court. While he attempted to waive this claim at oral argument, we nonetheless are obligated to decide jurisdictional issues. Pizza of Hawaii, Inc. v. Shakey's Inc. (Matter of Pizza of Hawaii, Inc.), 761 F.2d 1374, 1377 (9th Cir.1985).
 
 
 6
 The Bankruptcy Amendments and Federal Judgeship Act of 1984 (1984 Act), Pub.L. 98-553, removed the statutory authorization of direct appeals from bankruptcy courts to the courts of appeal. SEC v. Danning (In re Carter), 759 F.2d 763, 764 (9th Cir.1985). However, though Judge King was sitting as the bankruptcy court, he is a district judge.
 
 
 7
 Under the statutory scheme in effect before the 1978 Bankruptcy Amendments, we held that we had jurisdiction over appeals from district judges sitting in bankruptcy even though we would not have jurisdiction over the same appeal from a decision of a bankruptcy referee. See Ellis v. Corey (Matter of Ellis), 674 F.2d 1238, 1245-46 n. 9 (9th Cir.1982). We find no reason to act differently under the 1984 Act.
 
 
 8
 A major purpose of the 1984 Act was to deal with the problems caused when the Supreme Court removed jurisdiction from the bankruptcy courts in Northern Pipeline Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). See 1984 U.S.Code Cong. & Admin.News 576, 579, 587, 590. Though the legislative history gives no indication of the specific reason that our jurisdiction over direct appeals from the bankruptcy court was removed, it seems logical to assume that it related to the concern over the proper role of non-Article III judges. See 1984 U.S.Code Cong. & Admin.News of 587 (remarks of Senator Dole), 590 (Remarks of Senator Hatch). Congress's concern may have been to prevent an appeal to this court before an Article III judge had ruled on an issue. This concern is not present if the original decision was made by an Article III district judge.
 
 
 9
 In addition, under the new scheme, if the appeal is not taken to this court, it would go to the district court of the district that includes the bankruptcy court, 28 U.S.C. Sec. 158(a), or to a bankruptcy appellate panel. 28 U.S.C. Sec. 158(b). It does not make sense to have appeals from a decision of an Article III judge heard by a panel of Article I judges, or by another judge of that judge's district court. We accordingly hold that we will treat an appeal from the decision of a district court judge sitting as a bankruptcy court as an appeal from a final decision of a district court appealable under 28 U.S.C. Sec. 1291. We have jurisdiction in this case.
 
 II. CONFLICT OF INTEREST
 
 10
 Yamamoto claims that Judge King should have disqualified himself from presiding over the adversary proceedings because he presided over the administrative portions of the case. He asserts that Judge King became too close to the case and to the trustee to remain impartial. 28 U.S.C. Sec. 455 requires the disqualification of federal judges "if a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." Sakellar v. Lockheed Missiles and Space Co., 765 F.2d 1453, 1457 (9th Cir.1985); United States v. Jaramillo, 745 F.2d 1245, 1248 (9th Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 2142, 85 L.Ed.2d 499 (1985). We have applied the standards of Sec. 455 even when the statute has not been asserted. Sakellar, 765 F.2d at 1457.
 
 
 11
 Though section 455 is stated in terms of a self-enforcing obligation upon the judge, it may be invoked by a party. Trotter v. International Longshoremen's and Warehousemen's Union, Local 13, 704 F.2d 1141, 1144 (9th Cir.1983) (per curiam); United States v. Conforte, 624 F.2d 869, 880 (9th Cir.), cert. denied, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980). There is no indication in the record that Yamamoto raised this issue below, but his failure to move for recusal at the trial level does not preclude his raising the issue on appeal. United States v. Sibla, 624 F.2d 864, 868 (9th Cir.1980).
 
 
 12
 The alleged bias in this case is said to stem from one judge's handling both administrative and adversary matters in the same case. Courts have held that bias and prejudice for the purposes of the statute must stem from an extra-judicial source, not from information gained in the course of the proceeding. Commercial Paper Holders v. Hine (Matter of Beverly Hills Bancorp.), 752 F.2d 1334, 1341 (9th Cir.1984); Trotter, 704 F.2d at 1144; United States v. Winston, 613 F.2d 221, 223 (9th Cir.1980). Whether this rule should apply with full force is not clear when the claim of bias stems from a bankruptcy judge's acting in a dual capacity. To the extent a bankruptcy judge must play both administrative and judicial roles, he is an actor as well as an adjudicator; intimate contact with day-to-day affairs of an estate and close contact with the trustee may make objective appraisal difficult and may create the appearance of partiality.
 
 
 13
 The Bankruptcy Amendments of 1978 were designed in part to address these concerns and to avoid "premature involvement [by the judge] in issues involving fair and objective adjudication." R. Aaron, Bankruptcy Law Fundamentals Sec. 4.02 at 4.4 (1984). Accord U.S. Department of Justice, Executive Office for U.S. Trustees, An Evaluation of the U.S. Trustee Pilot Program for Bankruptcy Administration 1 (1983) (Evaluation ). While this goal has been realized to some extent, see Evaluation at 199, there are situations in which a bankruptcy judge still is involved in an administrative role. See R. Aaron, Bankruptcy Law Fundamentals Sec. 4.02 at 4.4.
 
 
 14
 We will not second-guess Congress to the extent of finding that this statutory scheme necessarily violates the mandate of section 455. However, we suggest that judges sitting in bankruptcy be especially solicitous in maintaining both the appearance and reality of impartiality when adjudicating matters with which they have had close involvement, erring on the side of recusing themselves when appropriate. In the case before us, we have no difficulty finding that the claims of bias alleged by Yamamoto[1] are specious at best. Disqualification is neither required nor appropriate.III. SUMMARY JUDGMENT
 
 
 15
 We review a grant of summary judgment de novo. Powell v. Tucson Air Museum Foundation of Pima County, 771 F.2d 1309, 1311 (9th Cir.1985). Summary judgment will be upheld if there are no genuine issues of material fact. State of Alaska v. United States, 754 F.2d 851, 853 (9th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 333, 88 L.Ed.2d 317 (1985). Because Yamamoto conceded that the debts in question were due and owing, there are no genuine issues of material fact remaining and we must affirm the summary judgment.[2]
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 Yamamoto claims that the following excerpts from the transcript are evidence of bias:
 "Mr. Yim: I think the records will show that, from the time that the Chapter 11 proceedings were filed back in February of 1983 to now, that the deficits have decreased from I believe somewhere from seventeen million down to four million.
 "The Court: I've been very close to what has been happening. Mr. Klenske went out and cancelled out a lot of loans, paid them off, settled them, got rid of the interest payments, reduced the overhead, so naturally he cut it way down. He had some outstanding loans to people; paid them off fifty cents on the dollar; cut the interest payments. He cut it way down."
 * * *
 The Court: There is nothing much to add to what Mr. Kawachika has said. He has covered all the bases. I mean here you have a fellow dealing with himself and saying I gave money to myself on a promissory note and I told myself I didn't have to pay it; and then later on I offered to pay and I told myself, no, you don't have to pay right now. You know it's kind of ridiculous.
 "Actually, if he actually was serious about saying all of these were not supposed to be loans, or at least not repayable loans, the he made some taxable income here which puts him in real problem [sic] with the IRS; and, if he didn't have that problem, he might even have an embezzlement problem here."
 
 
 [2]
 Yamamoto also raises issues of unclean hands and replevin and addresses numerous allegations made by plaintiff's original complaint. The unclean hands and replevin issues were not raised below and are not related to the counts involved in the summary judgment. Similarly, the other contentions relate to matters still before Judge King. None of these matters is properly before us and they need not be addressed. See Kline v. Johns-Manville, 745 F.2d 1217, 1221 (9th Cir.1984). Yamamoto's contention that our jurisdiction is preempted by the state court proceeding is meritless. Federal bankruptcy proceedings stay state court actions involving the bankrupt estate. 11 U.S.C. Sec. 362(a)