OPINION
 

 CYNTHIA HOLCOMB HALL, Circuit Judge:
 

 George Q. Cannon, a former director of The Hawaii Corporation (THC), appeals from an order of the district judge sitting in bankruptcy requiring him to relinquish his THC stock to the bankruptcy trustee. The district judge held that a settlement agreement executed by Cannon and THC’s trustee in bankruptcy unambiguously provided for Cannon’s surrender of his stock. We affirm.
 

 I
 

 This case arises out of the settlement of certain disputes between THC, the bankrupt involved in the Chapter 10 proceeding below, and certain officers and directors of THC. Following an extensive investigation of the former management of THC, the bankruptcy trustee filed an action in the bankruptcy court against these former officers and directors alleging,
 
 inter alia,
 
 breaches of fiduciary duty and negligence. Later, three class actions were filed in the United States District Court for the District of Hawaii by certain investors in THC Financial Corp., a wholly-owned subsidiary of THC. The class plaintiffs asserted violations of federal securities laws and state statutes against the directors and officers.
 

 George Q. Cannon was a director of THC and owned 93,238 shares of THC stock. In response to the pending action, Cannon and other THC directors and officers filed an action in district court on behalf of themselves seeking a declaration that the directors and officers liability insurance policy issued to THC by Continental Casualty Company was in full force and effect and that the class was entitled to coverage thereunder. Certain directors also filed lawsuits against THC seeking indemnification of legal expenses and liability.
 

 Continental Casualty filed a class action against THC seeking recission of the policy on the basis that it was fraudulently procured. ■ Summary judgment was issued against Continental Casualty on several issues, and the insurer then settled with Cannon and other directors. The directors and officers correspondingly settled with the THC Financial class plaintiffs. Finally, the THC bankruptcy trustee settled with Continental Casualty, the THC Financial class plaintiffs, and the directors and officers.
 

 The terms of this last settlement agreement provide the basis for the present dispute. A release appended to the settlement agreement provided that the relea-sors (including appellant here) released the trustee and THC of all claims, and that it was “the Releasor’s intention to, and the Releasor does hereby, fully, finally and forever settle and release any and all claims, demands, causes of action or interests, known or unknown, suspected or unsupect-ed, of every kind and nature whatever. ...”
 

 The settlement was conditioned, in paragraph 4(d) of the agreement, upon the “entry of a final order by the Reorganization Court approving this Agreement and specifically providing that the Class Claims and all claims against or interest in THC of any nature whatsoever of the Directors and Officers shall be forever barred....”
 

 Subparagraph 6 of the settlement agreement details the counter-release by THC. That provision stated in part:
 

 
 *1141
 
 Upon Final Approval of this Agreement, and except as reserved in Paragraphs 4(h) and 7 hereof, THC hereby releases, and discharges, absolutely and forever, each Director and Officer from any and all claims, known and unknown, suspected and unsuspected, of any kind and nature whatsoever, which now exist, may heretofore have existed or hereafter exist in favor of THC against any Director or Officer. THC acknowledges that it may hereafter discover facts in addition to or different from those which it now knows or believes to be true, but it is its intention to, and it does hereby, fully and finally forever settle and release any and all claims, disputes, and differences, known and unknown, suspected and unsuspected, which now exist or may heretofore have existed.
 

 The settlement agreement was executed in 1979. In 1985 when it became apparent that stockholders would receive a distribution from the bankrupt’s estate, the trustee filed an Application for Order Compelling Surrender of Stock Certificates. The district judge sitting in bankruptcy issued the order requiring Cannon to relinquish his stock to the trustee. The decision was based on a finding that the language of the settlement agreement unambiguously barred and extinguished Cannon’s equity interest in THC.
 

 II
 

 The parties agree that we have jurisdiction to decide this case. Nonetheless, we are required to consider the presence or absence of subject matter jurisdiction
 
 sua sponte. Pizza of Hawaii, Inc. v. Skakey’s Inc. (In re Pizza of Hawaii, Inc.),
 
 761 F.2d 1374, 1377 (9th Cir.1985). Section 104(a) of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333, delineates the scope of our jurisdiction over bankruptcy appeals. Section 104(a) added a new section 158 to Title 28, replacing 28 U.S.C. § 1293 (1982), formerly governing appellate jurisdiction over bankruptcy matters. Under 28 U.S.C. § 158(d), we have jurisdiction over “appeals from all final decisions, judgments, orders, and decrees” of district courts reviewing decisions of bankruptcy courts.
 
 Farber v. 405 N. Bedford Dr. Corp. (In re 405 N. Bedford Dr. Corp.),
 
 778 F.2d 1374, 1376-77 (9th Cir.1985).
 

 This case does not arise as an appeal from the final decision of a district court reviewing a decision of an underlying bankruptcy court, however. Instead, this appeal comes to us directly from a federal district judge sitting in bankruptcy. We recently have held that we have jurisdiction over such matters, but not under 28 U.S.C. § 158(d). Appellate jurisdiction over appeals from district judges sitting in bankruptcy exists under 28 U.S.C. § 1291, the statute governing appeals from the final decisions of a district court.
 
 Klenske v. Goo (In re Manoa Finance Co.),
 
 781 F.2d 1370, 1372 (9th Cir.1986) (Goo).
 

 Ill
 

 Regardless of whether the appeal arises under section 158(d) or section 1291, the order of the district court must be “final” before we have jurisdiction to review it. We, however, have developed liberalized rules of finality for bankruptcy cases arising under section 158(d).
 
 See, e.g., Farber,
 
 778 F.2d at 1377;
 
 Crocker National Bank v. American Mariner Industries, Inc. (In re American Mariner Industries, Inc.),
 
 734 F.2d 426 (9th Cir.1984);
 
 White v. White (In re White),
 
 727 F.2d 884 (9th Cir.1984);
 
 Mason v. Integrity Insurance Co. (In re Mason),
 
 709 F.2d 1313 (9th Cir.1983). Because
 
 Goo
 
 states that our jurisdiction in cases like the instant action arises under section 1291 and not section 158(d), we hold that these liberalized rules do not apply to appeals from district judges sitting in bankruptcy.
 
 Mason
 
 makes clear that the rule of finality for bankruptcy cases is more liberal than the finality rule under 28 U.S.C. § 1291.
 
 See Mason,
 
 709 F.2d at 1316 (“The thrust of Levin’s argument is that one should determine if an order is final in light of the unique nature of bankruptcy procedure and not with blind adherence to the rules of
 
 *1142
 
 finality developed under 28 U.S.C. § 1291.”);
 
 id.
 
 at 1318 (“Our decision that the entry of an order of relief is a final decision appealable as of right to this court by the debtor should not be read to imply that this court endorses a liberalization of the rules governing finality in any other context. The unique nature of bankruptcy procedure dictates, however, that we take a pragmatic approach to the question of finality.”).
 

 Because the liberalized rules of finality for bankruptcy appeals do not apply to 28 U.S.C. § 1291 appeals, this court has jurisdiction over this case only if the order of the district judge is an appealable collateral order.
 
 See Cohen v. Beneficial Industrial Loan Corp.,
 
 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949);
 
 Forgay v. Conrad,
 
 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848).
 
 [1]
 
 The order must “fall in that small class which finally determine claims of rights separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.”
 
 Cohen,
 
 337 U.S. at 546, 69 S.Ct. at 1225.
 

 The collateral order doctrine and the rule of
 
 Forgay v. Conrad
 
 compel a finding of finality for the order here. Under the
 
 Cohen
 
 collateral order doctrine, for an order to be reviewable it must “(1) be independent and easily separable from the substance of other claims in the action; (2) present a need to secure prompt review in order to protect important interests of any party; and (3) be examined in the light of practical, rather than narrowly technical, considerations.”
 
 Growth Realty Compa
 
 
 *1143
 

 nies v. Regency Woods Apartments, (In re Regency Woods Apartments, Ltd.),
 
 686 F.2d 899, 902 (11th Cir.1982). Under the
 
 Forgay-Conrad
 
 rule, an order is final if it requires the immediate turnover of property and subjects the party to irreparable harm if the party is forced to wait until the final outcome of the litigation.
 
 Forgay v. Conrad,
 
 47 U.S. (6 How.) at 203-06 (1848);
 
 Growth Realty,
 
 686 F.2d at 902.
 

 Cannon would suffer irreparable injury if forced to wait until the conclusion of the case in the district court to appeal the order requiring turnover of the stock. The order requires turnover of the shares and paves the way for a distribution of the remaining assets of the bankrupt’s estate to the shareholders. Cannon would not share in the distribution. If this court were to hold that the order is not final, Cannon would be forced to wait until the case is concluded. If later successful on appeal, Cannon would then be forced to recover his pro rata share of the shareholder distribution from thousands of shareholders. The problems that would accompany such an action are manifest. Cannon’s action is also easily separable from the other claims involved in the proceeding. Under
 
 Cohen
 
 and the
 
 Forgay-Conrad
 
 rule, this order is a final one.
 

 IV
 

 We turn now to the merits. The interpretation of this settlement agreement is governed by the Hawaii law of contracts,
 
 Hawaii State Teachers Association v. Hawaii Public Employment Relations Board,
 
 60 Hawaii 361, 590 P.2d 993, 997 (1979), and the issue of whether the language of the contract is unambiguous involves an interpretation of Hawaii law,
 
 Bishop Trust Co. v. Central Union Church,
 
 3 Hawaii App. 624, 656 P.2d 1353, 1356 (1983). We review de novo the district judge’s conclusion that the agreement unambiguously required Cannon to relinquish his THC stock.
 
 In re McLinn,
 
 739 F.2d 1395, 1400 (9th Cir.1984) (en banc).
 

 “Ambiguity is said to exist in a contract when there is doubt as to the meaning of written words.”
 
 Government Employees Insurance Co. v. Franklin,
 
 66 Hawaii 384, 662 P.2d 1117, 1119 (1983);
 
 see also Airgo, Inc. v. Horizon Cargo Transport, Inc.,
 
 66 Hawaii 590, 670 P.2d 1277, 1280 (1983) (“A contract is ambiguous when the terms of the contract are reasonably susceptible to more than one meaning.”). The language of this settlement agreement leaves no doubt that the agreement required Cannon to forfeit his THC stock.
 

 The agreement bars all of Cannon’s “claims against or interest in THC of any nature whatsoever.” The word “claims” ordinarily refers to legal claims, and this reading is particularly appropriate here in the context of a settlement agreement. The word “interest” must go further. And by its plain meaning, the phrase “interest in THC of any nature whatsoever” would encompass equity interests in THC.
 
 [2]
 

 Cannon asserts that the contract was intended to refer only to interests related to his capacity as a director of THC, not to his interests as a THC stockholder. There is no provision in the contract limiting the scope of the word “interest” in this manner; hence, there is no provision within the four corners of the contract which raises a doubt as to the meaning of the written words.
 

 It is noteworthy that the language of THC’s counter-release is different from that of Cannon’s release. Subparagraph 6 of the settlement agreement describes THC’s release of the officers and directors. It releases these individuals of “any and all claims.” Nowhere does this provision refer to “interests.” THC had no “interests” in the individuals. Cannon did have “inter
 
 *1144
 
 ests” in THC, one of which was his stock ownership. We, therefore, agree with the district judge that the settlement agreement unambiguously required Cannon to turnover all of his stock in THC.
 
 [3]
 

 V
 

 The trustee requests that we assess double costs and attorney’s fees against Cannon under provisions governing frivolous appeals.
 
 See
 
 Fed.R.App.P. 38; 28 U.S.C. § 1912;
 
 NLRB v. Catalina Yachts,
 
 679 F.2d 180, 182 (9th Cir.1982). An appeal is frivolous when the result is obvious,
 
 Jaeger v. Canadian Bank,
 
 327 F.2d 743, 746 (9th Cir.1964), or where the arguments are “wholly without merit.”
 
 Libby, McNeill and Libby v. City National Bank,
 
 692 F.2d 504, 515 (9th Cir.1978).
 

 While we agree with the trustee that he is entitled to prevail on the merits of the appeal, we do not believe that Cannon’s arguments are frivolous. We, therefore, decline the invitation to impose sanctions.
 

 For the reasons stated, the judgment of the district judge is
 

 AFFIRMED.
 

 [1]
 

 . Our recent opinion in
 
 Benny v. England (In re Benny),
 
 791 F.2d 712 (9th Cir.1986) does not compel a different result.
 
 Benny
 
 held that the district court’s decision concerning the constitutionality of the authority of bankruptcy judges was not a final order. That issue in the underlying bankruptcy case was withdrawn from the bankruptcy court by the district judge.
 
 Benny
 
 held that 28 U.S.C. § 1291 conferred jurisdiction upon us to hear appeals in withdrawn cases but did not decide whether liberalized rules of finality applied to such cases.
 
 See Benny,
 
 791 F.2d at 718-19.
 

 We do not believe that the liberalized rules of finality articulated in cases like
 
 Mason
 
 apply to 28 U.S.C. § 1291 appeals even when the appeals involve "bankruptcy matters.” There are at least two reasons militating in favor of applying only the collateral order doctrine and the
 
 For-gay-Conrad
 
 rule to bankruptcy appeals arising under section 1291. First, cases like
 
 Mason
 
 did not require us to reinterpret our jurisdictional authority under 28 U.S.C. § 1291. Those cases only involved an interpretation of appellate jurisdictional provisions specifically designed for bankruptcy appeals.
 
 See, e.g.,
 
 28 U.S.C. § 1293 (repealed 1984); 28 U.S.C. § 158(d).
 
 Mason
 
 held that the definition of finality for the jurisdictional provision specifically designed for appeals from the decisions of bankruptcy courts must be in accord with the congressional intent underlying the Bankruptcy Code itself. Because there is a need for the prompt resolution of certain matters involving estate property and because the pervasive scheme of the Code is specially designed to deal with these problems, we have construed congressional grants of appellate jurisdiction over bankruptcy matters in accord with the Code purposes. We do not believe, however, that the adoption of the Bankruptcy Code effects an implied, retroactive amendment of 28 U.S.C. § 1291 enlarging our jurisdiction beyond the bounds of established finality principles. Since
 
 Cohen,
 
 section 1291 finality has been gauged by the collateral order doctrine, and we do not believe that Congress intended to alter that rule impliedly for all appeals raising a "bankruptcy issue.” Second, and as a practical matter, a rule applying the collateral order doctrine to all appeals arising under 28 U.S.C. § 1291 avoids the possibly difficult inquiry of whether an appeal is or is not a "bankruptcy appeal.” A brief hypothetical demonstrates the problem. Assume that a corporation is a plaintiff in a federal court civil action. After the trial has commenced, the corporation filed a bankruptcy petition. The bankruptcy trustee then assumes control over the litigation in federal court.
 
 See
 
 Bankr. R. 6009. If individual counts in the debtor’s complaint were dismissed by the district judge and the debtor appealed immediately, we would be required to determine whether the order of the district court was an appealable final order. If the liberalized
 
 Mason
 
 rules of finality applied in this 28 U.S.C. § 1291 appeal, we would be required to decide whether the appeal is a “bankruptcy appeal” subject to liberal finality rules or a "nonbankruptcy appeal” subject to ordinary finality rules and the collateral order doctrine. We decline to adopt a rule that leads to such an intractable inquiry, devoid of a limiting principle. Therefore, we hold that bankruptcy appeals arising under 28 U.S.C. § 1291 will be reviewed for finality under the collateral order doctrine.
 

 [2]
 

 . The Trustee suggests that we should impose the Bankruptcy Code’s definition of "interest” upon Cannon. There is no provision in the agreement itself incorporating that definition in the agreement.
 

 [3]
 

 . Cannon argues alternatively that the trustee is equitably estopped from seeking turnover of his THC stock because the trustee waited for six years to request such relief. The record indicates, however, that the parties to the proceeding did not expect any distribution to shareholders until that time. In any event, in order to prevail on an estoppel theory, Cannon must demonstrate detrimental reliance upon the trustee’s silence.
 
 Bob’s Big Boy Family Restaurants v. NLRB,
 
 625 F.2d 850, 854 (9th Cir.1980). Cannon does not argue that he relied upon the trustee’s delay to his detriment, and the facts do not support any finding of detrimental reliance.