LOGAN, Circuit Judge.
This is an original proceeding in the nature of mandamus. Petitioners seek an *1504 order of this court compelling the respondent bankruptcy judge, who approved a Chapter 11 reorganization plan for Kaiser Steel Corporation (Kaiser), to disqualify himself from presiding over two adversary proceedings (the Frates and Rial proceedings) commenced by Kaiser in which Perma Pacific Properties (Perma) was a named defendant, and from serving as presiding judge in the Perma reorganization. In addition, petitioners ask us to direct the respondent district judge to vacate her refusal to order the bankruptcy judge to recuse. The Frates and Rial proceedings, in which Kaiser seeks rescission, avoidance of liens, and millions of dollars in damages, involve transactions and transfers of property that antedate commencement of the Kaiser reorganization proceedings.
I
Petitioners seek recusal of the bankruptcy judge principally under 28 U.S.C. § 455(a), on the basis that the judge’s continued participation in the proceedings presents the appearance of partiality. They rely upon two Tenth Circuit cases, United Family Insurance Co. v. Barrow, 452 F.2d 997 (10th Cir.1971), and American Employers’ Insurance Co. v. King Resources Co., 545 F.2d 1265 (10th Cir.1976). The bankruptcy judge, in denying the motions for recusal, expressed the view that those two decisions would have been decided differently had they arisen under the current bankruptcy code.
Some of the practices that concerned us in those cases have been eliminated, and we might have used slightly different language had the current bankruptcy code been in effect when we decided those cases. But the principles in Barrow and King Resources, properly understood, survived the recodification of bankruptcy law and are the law of this Circuit.
A bankruptcy judge may preside over both the administrative and adversarial portions of a bankruptcy case. See 28 U.S.C. § 157. But recusal is necessary if there is evidence of actual bias, if the bankruptcy judge by words or actions reasonably appears to have prejudged adversarial proceedings over which he is to preside, or if the judge appears “boxed in" by prior rulings such that he will be forced to reach a certain result in an adversarial proceeding regardless of the merits. We do not, however, read our cases or any other authorities to require a judge who approves a Chapter 11 reorganization plan automatically to disqualify himself from presiding over adversarial proceedings that will affect the total recovery of the bankrupt’s creditors. See Klenske v. Goo (In re Manoa Finance Co.), 781 F.2d 1370, 1373 (9th Cir.1986), cert. denied, 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987).
Here, there is no claim of actual bias. Therefore, we must determine whether the judge appears to have prejudged adversarial proceedings or to have placed himself in a position where it appears he will be forced to decide one or more of the adversary proceedings in Kaiser’s favor.
II
To show the appearance of partiality, petitioners rely in part upon the judge’s approval of Kaiser’s Chapter 11 plan, which required him to find that “[cjonfir-mation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor.” 11 U.S.C. § 1129(a)(ll). They also rely upon the judge’s statements that without successful prosecution of the litigation there likely would be no significant cash payout for unsecured creditors. See Trans. Sept. 23, 1988 Hearing at 14, contained in Kaiser’s Mem. in Opposition to Defendant’s Motions to Stay, Ex. B (Sept. 23 hearing).
Kaiser’s Chapter 11 plan has both long- and short-term aspects. The long-term focuses on four principal Kaiser assets: the Eagle Mountain mine property and railroad, contemplated to be used as a landfill for southern California cities; the stock in Fontana Water Union Company, which owns valuable water rights, proposed to be sold or leased; the Fontana waste treatment property, thought to be operable as a *1505 hazardous waste disposal facility; and the Fontana steel mill site, contemplated to be sold as valuable development real estate after environmental cleanup. The short-term aspects encompass the immediate sale of certain other assets and the pursuit of the litigation.
The court clearly believed that the long-term program was viable and not dependent upon the success of the litigation. The litigation was regarded as a possible source of funds that could be used for immediate payout to unsecured creditors. The bankruptcy judge explicitly found that “without the prosecution of the litigation, the opportunity for a significant payout might not arise, but the underlying business programs through MRC [the waste disposal project] and Lusk [the mill site cleanup project] and the water stock and the aqueous treatment programs remain and could be operated.” Id. Apparently the unsecured creditors own all of the stock of the reorganized Kaiser Corporation, see Brief of Kaiser Steel Corporation at 35; and the Retiree Medical Benefits Trust and the Pension Benefit Guaranty Corporation (PBGC) hold a majority of those shares. Thus, there will be recovery for the unsecured creditors through their equity ownership if long-term projects succeed. Thus, we hold that neither the approval of Kaiser’s Chapter 11 plan nor the judge’s comments on cash pay out for unsecured creditors gives the appearance of prejudgment of the litigation or so corners the judge that he seems to be required to decide the litigation in a particular manner.
Ill
Petitioners also cite the court’s approval of a $4 million loan from PBGC to Kaiser to fund litigation, including Kaiser’s pursuit of the Frates and Rial cases, as an indication of the judge’s apparent partiality, or as support for the proposition that he will be forced to decide some litigation in favor of Kaiser to enable it to repay that loan. We see nothing ominous in the approval of the loan from PBGC to fund the litigation. PBGC is a twenty-eight percent shareholder in the reorganized company. It is both a secured and unsecured creditor. It is not unusual for a creditor to loan a bankruptcy estate money to pursue litigation claims; indeed, in particular circumstances we recently held it to be an abuse of discretion for a district court not to allow a creditor to fund litigation to recover assets for a bankruptcy estate. See Bank of Woodward v. Fox (In re Reiss), 881 F.2d 890, 892-893 (10th Cir.1989). The bankruptcy judge in the instant case stated explicitly, “I don’t think anyone has testified that without the PBGC funds the debt- or would be without means to prosecute the litigation. It might be more costly, there may be more contingent fee arrangements, but I have not heard, that I can recall, that without those funds, the plan will fail.” Sept. 23 Hearing at 13-14. Thus, we cannot regard approval of a loan to pursue litigation to be a prejudgment that the litigation will succeed.
Further, because we consider the facts as they appear at the time we are considering the mandamus request, we note that settlements already have been approved with persons other than petitioners bringing in more than $21 million, a sum apparently sufficient to cover all administrative and litigation costs, and to permit distributions to unsecured creditors. See Kaiser Steel Resources, Inc., 1988 Annual Report on SEC Form 10-K at 67 (1989), contained in Addendum to Reply Brief of Petitioners at 67. Thus, it seems quite apparent that the judge need not decide against the Frates and Rial petitioners to ensure that the reorganized company has the funds to pay administrative and litigation costs.
IV
More bothersome is petitioner’s argument that the bankruptcy judge already has decided specific issues in the Kaiser bankruptcy proceedings that indicate prejudgment or would essentially force the judge to make rulings in the Frates and Rial proceedings in favor of Kaiser. Petitioners cite several such instances: approving rejection of leases and executory contracts, consenting to settlement agree *1506 ments, and finding alleged assets to be of small or no value. See Supplemental Brief of Petitioners at 14-24. Petitioners say that Kaiser’s financial condition, including the value of its assets at the time of the transactions challenged in Frates and Rial, is crucial to their defense.
Kaiser makes various responses. First, it points out that all of these cited rulings were made more than a year before petitioners sought the recusal. We do not regard the delay as fatal to petitioners’ cause, because a recusal motion should be permitted at any time it becomes apparent that a judge is biased or suffers from the appearance of bias. But the delay does indicate that petitioners did not regard these rulings as greatly debilitating to their cases. We also must recognize that “familiarity with defendants and/or the facts of a case that arises from earlier participation in judicial proceedings is not sufficient to disqualify a judge from presiding at a later trial.” In re Corrugated Container Antitrust Litigation, 614 F.2d 958, 965 (5th Cir.) (footnote omitted), cert. denied, 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed.2d 114 (1980). In many ordinary litigation situations judges make preliminary decisions on offers of evidence, or make decisions otherwise affecting the parties, that familiarize the judge with the facts in that case or in related cases in which the judge must rule. Kaiser correctly points out that 28 U.S.C. § 157, by permitting the presiding judge in a reorganization to preside over adversary proceedings affecting the assets, contemplates that bankruptcy judges will encounter situations similar to that before us with some frequency.
Further, Kaiser asserts that many of the rulings were in uncontested proceedings and, therefore, thé judge acted without hearings or rejected objections on different grounds than would be in issue in Frates or Rail (e.g., the judge rejected executory mining consulting contracts with Perma because Kaiser was not in need of the services under the agreements). Kaiser also challenges petitioners’ assumption that these rulings are connected to the Frates and Rail proceedings. Although we are handicapped by not having all of the bankruptcy court and district court records, we have carefully reviewed the briefs and exhibits provided us, and we see nothing which convinces us that the bankruptcy judge appears to have prejudged issues involved in the Frates and Rial litigation or has placed himself in such a position that he will be forced to decide an issue in favor of Kaiser regardless of the evidence presented to him in that litigation.
V
With respect to Perma’s separate motion for recusal, at first blush it would appear that the bankruptcy judge should not oversee the Chapter 11 reorganizations of two parties that are opposing each other in litigation before him. The bankruptcy judge, however, has approved a Chapter 11 plan only for Kaiser, and has found that the success of that plan is not dependent upon the success of Kaiser’s lawsuit against Perma. Perma, on the other hand, apparently had no reason to file bankruptcy except for the suit filed against it by Kaiser, which seeks return to Kaiser of Perma’s major asset. By filing, Perma used the bankruptcy to obtain an automatic stay of Kaiser’s litigation against it. The bankruptcy court apparently has not yet approved a Chapter 11 plan for Perma.
Perma in effect has forced Kaiser to pursue its suit as an ordinary claim under 11 U.S.C. § 502 in the Perma bankruptcy case. While Perma has sold some assets, with court approval, the proceeds were placed in an escrow account, apparently at Perma’s request, pending the outcome of Kaiser’s claim. Perma apparently has not sought approval of any loan for litigation expenses or approval of expenditures to defend against Kaiser’s claim. Thus, we do not see that the bankruptcy judge has as yet acted in any way that might be considered prejudging the litigation or prejudicing Perma. In refusing Perma’s motion for his recusal, the judge stated that the time might come when he would have to recuse. That time may come soon. But considering the current status of the Kai *1507 ser-Perma litigation and the Perma bankruptcy, that moment is not yet upon us.
VI
In conclusion, we hold that petitioners have not established actual bias by the bankruptcy judge or an appearance of such partiality as to require recusal in the Frates and Rial litigation nor, as yet, has it been shown in the Perma Chapter 11 proceeding. We also have been shown no rulings convincing us that the judge has placed himself in a position in which he must decide an adversarial proceeding in favor of any one party to vindicate some prior action he has taken.
The petition for a writ of mandamus is DENIED.