Opinion by Judge IKUTA; Concurrence by Judge QUIST; Partial Concurrence and Partial Dissent by Judge GRABER.
OPINION
IKUTA, Circuit Judge:
Silar Advisors, LP, Robert Leeds, Jay Gracin, and Sara Pfrommer (collectively “the Silar Parties”), and Tracy Klestadt and Klestadt & Winters, LLP, Katherine M. Windier, and Bryan Cave, LLP (collectively “Counsel”), appeal the district court’s order imposing sanctions on them pursuant to Rule 9011 of the Federal *812 Rules of Bankruptcy Procedure and the district court’s inherent powers. We must decide whether the district court’s order is immediately appealable. We hold that it is not and dismiss the appeal for lack of jurisdiction.
I
The Silar Parties are the owners and officers of Asset Resolution, LLC, which serviced loans that were funded in part by appellee lenders. Asset Resolution is the sole member and manager of fourteen special purpose limited liability companies. Asset Resolution and these special purpose companies (collectively “Debtors”) have each filed a petition in bankruptcy. The appellees here are the lenders (now creditors in the bankruptcy proceeding) and the bankruptcy trustee, both of whom were awarded sanctions against the Silar Parties and Counsel.
Debtors’ bankruptcy proceedings are the latest in a complicated series of legal proceedings involving these various parties. In 2007, before the bankruptcy proceedings commenced, the lenders and Silar Advisors’ predecessor-in-interest began to dispute their respective rights to proceeds under the relevant loan servicing agreements. As a result, the lenders brought a lawsuit in Nevada district court to clarify their contractual rights under these servicing agreements. While this contract dispute was ongoing, Silar Advisors, which held a security interest in the disputed servicing agreements, foreclosed on its collateral and assigned its interest in the agreements to its newly formed subsidiary, Asset Resolution. Subsequently, the lenders added Silar Advisors and Asset Resolution as defendants in the contract dispute lawsuit.
During the summer of 2009, the Nevada district court presiding over the contract suit issued a series of orders regarding the compensation owed to Asset Resolution under the disputed loan servicing agreements. Among other things, the orders awarded Asset Resolution substantially less than the full amount of servicing fees it had requested. In October 2009, Debtors filed chapter 11 petitions in the bankruptcy court for the Southern District of New York. This bankruptcy case was transferred to the bankruptcy court for the District of Nevada in November 2009. On January 25, 2010, the Nevada district judge presiding over the contract dispute entered an order withdrawing the reference for the entire bankruptcy case. Four days later, that Nevada district court, now sitting as a bankruptcy court, converted Debtors’ chapter 11 bankruptcy filing to a chapter 7 proceeding.
On February 9, 2010, the lenders filed a motion for sanctions against the Silar Parties and Counsel. The district court granted the motion, holding that sanctions under Federal Rule of Bankruptcy Procedure 9011[1] and the court’s inherent powers were appropriate because the underlying bankruptcy case was filed “for improper purposes and [was] frivolous.” In support of this holding, the district court found that the Silar Parties “never had any intention or ability to reorganize” Asset Resolution, which was merely a “shell entity” without any assets to reorganize. Further, the Nevada district *813 court found that Debtors’ bankruptcy filing in the Southern District of New York was solely an attempt to evade the district court’s jurisdiction and, specifically, the allegedly adverse impact of its orders over the summer of 2009.
The district court’s sanctions order made the Silar Parties and Counsel jointly and severally liable for some $279,615 in sanctions, an amount based on the lenders’ attorney’s fees and expenses. The district court also ordered Counsel to disgorge its retainers ($300,000 each) received for filing and litigating the underlying bankruptcy case. The Silar Parties and Counsel appealed.
II
We have jurisdiction over appeals from a district court sitting in bankruptcy under 28 U.S.C. § 1291.[2] Klenske v. Goo (In re Manoa Fin. Co.), 781 F.2d 1370, 1372 (9th Cir.1986) (per curiam). Section 1291 provides that federal appellate courts, with certain exceptions not applicable here, “shall have jurisdiction of appeals from all final decisions of the district courts of the United States.” A “final decision” is one that “ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.” Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945). The Supreme Court has construed § 1291 slightly more broadly than its narrow language would suggest, holding that it gives appellate courts jurisdiction over a “small class” of interlocutory orders that are nevertheless appealable “final decisions.” See Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). These appealable collateral orders “must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.” Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). “Because collateral jurisdiction requires all three elements, we lack collateral order jurisdiction if even one is not met.” McElmurry v. U.S. Bank Nat’l Ass’n, 495 F.3d 1136, 1140 (9th Cir.2007).
The Silar Parties and Counsel do not claim that the sanctions order in this case meets Cohen’s tests. Instead, they assert that we may hear their appeal of the sanctions order in light of the more flexible jurisdictional principles that apply in bankruptcy. See Benny v. England (In re Benny), 791 F.2d 712, 718 (9th Cir.1986) (recognizing that “the general standards for appealability of bankruptcy orders are broader and more flexible than those that apply to ordinary civil cases.”).
This argument overlooks the fact that the order in this case was issued by a district court sitting in bankruptcy. Our more flexible standard for interlocutory appeals in the bankruptcy context applies only to appeals from orders issued by a bankruptcy appellate panel or by a district court hearing an appeal from a bankruptcy court. See Cannon v. Haw. Corp. (In re Haw. Corp.), 796 F.2d 1139, 1141 (9th Cir. 1986); see, e.g., Cangrejo Invs., LLC v. Mann (In re Bender), 586 F.3d 1159, 1163 (9th Cir.2009). We have made this distinction because our jurisdiction over these two types of appeals arises from different statutes. We have jurisdiction to hear ap *814 peals from district courts sitting in bankruptcy under § 1291, but have jurisdiction to hear appeals from district courts reviewing bankruptcy court decisions under 28 U.S.C. § 158(d)(1),[3] as well as § 1291. See Conn. Nat’l Bank v. Germain, 503 U.S. 249, 253, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). While § 1291 gives us jurisdiction only over “final decisions,” the scope of § 158(d) is broader: it gives appellate courts the authority to hear appeals from “final decisions, judgments, orders, and decrees” entered by district courts. We have interpreted this jurisdictional grant to give us flexibility in asserting jurisdiction over interlocutory orders, because “certain proceedings in a bankruptcy case are so distinct and conclusive either to the rights of individual parties or the ultimate outcome of the case” that their resolution should be immediately appealable, even if such resolution does not end the entire litigation on the merits. Mason v. Integrity Ins. Co. (In re Mason), 709 F.2d 1313, 1316-17 (9th Cir.1983).[4] We recognized that because § 158 is an “appellate jurisdictional provision[] specifically designed for bankruptcy appeals,” a flexible definition of finality in that context is in accord with Congress’s intent to ensure prompt resolution of matters involving estate property. In re Haw. Corp., 796 F.2d at 1142, n. 1.[5]
We have made clear, however, that these flexible jurisdictional principles “do not apply to [§ 1291] appeals from district judges sitting in bankruptcy.” In re Haw. Corp., 796 F.2d at 1141 (emphasis added). Hawaii Corp. considered the appealability of an order, issued by a district court sitting in bankruptcy, requiring the debt- or’s director to make an immediate transfer of certain stock to the bankruptcy trustee. Id. at 1140. Although the parties agreed that we had jurisdiction under the flexible finality rules enunciated in Mason, we disagreed. Id. at 1141. We held that Mason’s determination that Congress intended § 158 to give appellate courts more flexibility in asserting jurisdiction did not apply to § 1291, because there was no evidence that Congress retroactively intended to enlarge our jurisdiction under that statute with the passing of § 158. Id. at 1142 n. 1. Accordingly, we rejected reliance on flexible finality when determining our jurisdiction to hear appeals from district courts sitting in bankruptcy, holding that these appeals, arising exclusively under § 1291, would be governed by the finality rule applicable to all civil appeals. Id. at 1141-42.
*815 We disagree with the concurrence’s suggestion that, notwithstanding § 1291 and Cohen, we should “simply treat jurisdiction of bankruptcy appeals under § 1291 in the same way that we treat bankruptcy appeals under § 158(d)(1).” Graber, J. concurrence at 824. First, as the concurrence itself acknowledges, we are bound by our decision in Hawaii Corp., and as a three-judge panel, we cannot overrule it. Hart v. Massanari, 266 F.3d 1155, 1171 (9th Cir.2001) (“Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court.”).
But even if Hawaii Corp. were erased, we would remain bound by Supreme Court decisions interpreting the scope of § 1291’s jurisdictional grant, because our power to hear appeals from district courts sitting in bankruptcy arises solely from that provision. We cannot expand our jurisdiction under § 1291 to match what we have under § 158(d), even when it arguably makes sense from a policy perspective. We have previously recognized this limitation. In SEC v. Capital Consultants LLC, the appellants argued that we should apply flexible finality principles to review interlocutory appeals arising in a receivership context because such cases raise the same policy concerns as bankruptcy appeals. 453 F.3d 1166, 1170 & n. 4 (9th Cir.2006) (per curiam). We held that we lacked the authority to do so because “Title 28 U.S.C. § 158 governs bankruptcy appeals ... and provides the more ‘flexible’ approach to which appellants refer. Title 28 U.S.C. § 1291 governs here.” Id. at 1170-71 n. 4. Because § 1291 also governs appeals from orders issued by a district court sitting in bankruptcy, we are likewise precluded from applying the flexible approach allowed by § 158(d), regardless of the purported policy benefits of this approach.[6]
The Supreme Court has acknowledged that the strict requirement of finality under § 1291 may be harsh in some cases: “Many interlocutory decisions of a trial court may be of grave importance to a litigant, yet are not amenable to appeal at the time entered, and some are never satisfactorily reviewable.” Carroll v. United States, 354 U.S. 394, 406, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1957). But Congress has not left parties without recourse in these situations. District courts may certify an interlocutory order for appeal, see 28 U.S.C. § 1292(b), or may enter final judgment “as to one or more, but fewer than all, claims or parties,” Fed.R.Civ.P. 54(b). Thus in Capital Consultants, discussed above, we declined to apply flexible finality principles to evaluate an interlocutory order but nevertheless asserted jurisdiction over claims by the receivership claimants who had sought and received Rule 54(b) certification from the district court. 453 F.3d at 1170.
Relying on Van Cauwenberghe v. Biard, 486 U.S. 517, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988), the concurrence argues that because a bankruptcy case is a bankruptcy case, whether arising under § 1291 or § 158(d), we have the authority to apply “a special rule of finality for a category of bankruptcy cases.” Graber, J., concurrence at 821. This misinterprets Supreme Court precedent, which holds *816 that a “category” is a type of judicial order, not a substantive area of law. In Van Cauwenberghe, the Court held that an order denying a motion to dismiss on the ground of forum non conveniens was not immediately appealable under Cohen, because in general “the question of the convenience of the forum is not completely separate from the merits of the action.” 486 U.S. at 527, 108 S.Ct. 1945 (quoting Coopers & Lybrand, 437 U.S. at 468, 98 S.Ct. 2454). The Court acknowledged that this reasoning might not be correct in every case: sometimes, the forum non conveniens determination is separate from the merits and in those cases “an immediate appeal might result in substantial savings of time and expense for both the litigants and the courts.” Id. at 529, 108 S.Ct. 1945. Nevertheless, the Court rejected a case-by-case appealability determination, stating that “[i]n fashioning a rule of appealability under § 1291,” courts must “look to categories of eases, not to particular injustices.” Id.; see also Richardson Merrell, Inc. v. Roller, 472 U.S. 424, 439, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985). By holding that determinations of forum non conveniens are not immediately appealable regardless of the legal context or facts of a particular case, the Supreme Court made clear that a determination of appealability applies to claims involving the same type of orders, not to claims arising in the same area of substantive law. See, e.g., Mohawk Indus., Inc. v. Carpenter, —U.S.-, 130 S.Ct. 599, 605-06, 175 L.Ed.2d 458 (2009) (holding that all disclosure orders adverse to the attorney-client privilege are not immediately appealable); Richardson Merrell, 472 U.S. at 439, 105 S.Ct. 2757 (holding the same for orders disqualifying counsel).
Under the concurrence’s interpretation of Van Cauwenberghe, by contrast, different jurisdictional rules would apply to different substantive areas of law. If a court can adopt “a special rule of finality for a category of bankruptcy cases,” Graber, J., concurrence at 2570, then it may also adopt special rules of finality for the category of antitrust cases or the category of securities cases. This means, for example, that a forum non conveniens determination might be immediately appealable in an antitrust case, but not in a securities case. No Supreme Court decision supports this approach.
Ill
Because our jurisdiction in this case does not arise under § 158(d)(1), the test for flexible finality set forth in Mason is inapplicable.[7] Therefore, we must consider whether the district court’s sanctions order, issued under both Rule 9011 and the court’s inherent power, meets Cohen’s three-prong test.
A
The Supreme Court has given us guidance on how we should apply Cohen to determine the immediate appealability of a sanctions order. See Cunningham v. Hamilton County, Ohio, 527 U.S. 198, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999). In Cunningham, a magistrate judge determined that an attorney had flouted discovery orders by, among other things, failing to produce required documents and providing insufficient responses to interrogatories. Id. at 200-01, 119 S.Ct. 1915. Relying on Federal Rule of Civil Procedure 37(a), which allows a court to sanction a party or attorney that fails to cooperate in *817 discovery, the magistrate judge ordered the attorney to pay the relevant attorneys’ fees and costs of the opposing party. Id. at 201, 119 S.Ct. 1915. The district court affirmed the order and the attorney immediately appealed. Id. at 201-02, 119 S.Ct. 1915. The Sixth Circuit dismissed the appeal for lack of jurisdiction. Id. at 202, 119 S.Ct. 1915.
The Supreme Court affirmed. Id. at 203, 119 S.Ct. 1915. The Court first held that a sanction order “neither ended the litigation nor left the court only to execute its judgment.” Id. at 204, 119 S.Ct. 1915. Turning to Cohen’s three-prong test, the Court held that the discovery sanction did not fall into the “small category of orders” that are immediately appealable because, among other reasons, appellate review of a discovery sanction generally cannot remain completely separate from the merits of the underlying action. Id. at 205, 119 S.Ct. 1915. The Court reasoned that “[a]n evaluation of the appropriateness of sanctions may require the reviewing court to inquire into the importance of the information sought or the adequacy or truthfulness of a response.” Id. This sort of inquiry, the Court held, “would differ only marginally from an inquiry into the merits and counsels against application of the collateral order doctrine.” Id. at 206,119 S.Ct. 1915. While acknowledging that some discovery sanctions might not be “inextricably intertwined with the merits” of a case, the Court rejected “a case-by-case approach to deciding whether an order is sufficiently collateral.” Id.
Our cases have recognized that the logic of Cunningham applies equally to other types of sanctions. In Stanley v. Woodford, a district court sanctioned an attorney for willfully disobeying a court order prohibiting the attorney from making further appearances in a certain case. 449 F.3d 1060, 1062 (9th Cir.2006). We applied Cunningham to hold that the sanctions order was not a collateral order. Id. at 1064-65. Although the district court in Stanley issued the sanctions order under its inherent powers and 28 U.S.C. § 1927(allowing sanctions for vexatious litigation tactics), we held that “the policies undergirding Rule 37(a) sanctions are not relevantly different from those justifying sanctions under § 1927 or a court’s inherent powers,” and that Cunningham should be construed as “applying more broadly than to Rule 37(a) sanctions alone.” Id. at 1064. In reaching this conclusion, we relied on other cases, both in and out of our circuit, that did not “distinguish between types of sanctions” when applying Cunningham to bar immediate review of their respective sanctions orders. Id. at 1065; see, e.g., Cato v. Fresno City, 220 F.3d 1073, 1074 (9th Cir.2000) (per curiam) (applying Cunningham to bar immediate review of sanctions imposed under Federal Rule of Civil Procedure 16(f), which authorizes a court to impose sanctions for noncompliance with scheduling or pretrial conference orders); Williams v. Midwest Employers Cas. Co., 243 F.3d 208, 208-09 (5th Cir.2001) (holding the same for a sanctions order under Federal Rule of Civil Procedure ll).[8] Similarly, in Markus v. Gschwend (In re Markus), we relied on Cunningham to hold that a bankruptcy court’s Rule 9011 sanctions order issued against an attorney who filed a frivolous motion was not a collateral order. 313 F.3d 1146, 1151 (9th Cir.2002).
*818 B
Our precedents applying Cunningham to various sanctions orders effectively decide this case.[9] We have already decided that the reasoning in Cunningham precludes us from hearing immediate appeals of sanctions orders under a court’s inherent powers, see Stanley, 449 F.3d at 1065, or under Rule 9011, see Markus, 313 F.3d at 1151. Although neither Stanley (which did not arise in a bankruptcy context) nor Markus (which considered our jurisdiction under § 158, rather than § 1291) is identical to the case before us, the distinctions are not material. The inherent authority of a district court to impose sanctions does not change when it is sitting in bankruptcy, given that a court draws its inherent power by nature of its status as a court of justice, rather than from the type of case it is hearing. See Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.), 77 F.3d 278, 284 (9th Cir.1996). Similarly, a sanctions order under Rule 9011 advances the same policy whether it is issued by a bankruptcy court as in Markus or, as here, by a district court sitting in bankruptcy. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (identifying the central policy goal of Rule 11 as “deter[ring] baseless filings”). Therefore, the logic of Stanley and Markus is equally applicable here.[10]
Moreover, the reasoning in Cunningham, that discovery sanctions are not completely separate from the merits of the underlying- action, applies to this case as well.[11] As noted above, the district court imposed the order on the Silar Parties on the ground that Debtors’ bankruptcy petition was frivolous and filed for an improper purpose. But the parties vigorously dispute this issue. First, the Silar Parties *819 allege that the filing was not frivolous because Asset Resolution was not in fact an empty shell company. Rather, it could be properly reorganized because it owned several assets, including fractional real property interests in many of the properties that were subject to the loan servicing agreements, claims for servicing fees, and third-party tort claims. Second, the Silar Parties and Counsel argue that the bankruptcy filing was proper because bankruptcy’s automatic stay would prevent harmful tax foreclosures on some of these serviced properties. Third, they argue that the bankruptcy rules provided procedural advantages necessary for achieving proper resolution of the ongoing contract litigation between Silar Advisors, Asset Resolution, and the lenders. Finally, they argue that filing for bankruptcy in New York was not an attempt to evade the Nevada District Court’s jurisdiction because Nevada was an improper venue at the time of its filing.
While the lenders disagree on all these issues, we cannot resolve these questions without carefully inquiring into all aspects of the Silar Parties’ financial and legal position leading up to the bankruptcy filing, as well as assessing the attendant benefits of filing for bankruptcy given those positions. Like the evaluation of discovery sanctions in Cunningham, such appellate review “would differ only marginally from an inquiry into the merits” of the bankruptcy proceeding and thus “counsels against application of the collateral order doctrine.” 527 U.S. at 206, 119 S.Ct. 1915.
Because the sanctions order here is not completely separate from the merits of the underlying bankruptcy case, it does not meet the Cohen test. See McElmurry, 495 F.3d at 1140. We therefore conclude that the sanctions order issued by the district court sitting in bankruptcy, whether supported by the district court’s inherent powers or Rule 9011, was not an appealable collateral order.[12]
IV
We recognize “the hardship that a sanctions order may sometimes impose on an attorney.” Cunningham, 527 U.S. at 209-10, 119 S.Ct. 1915. Nevertheless, we are bound by the Court’s conclusion that an “expansive interpretation of § 1291’s ‘final decision’ requirement” is not the preferred solution for alleviating such burdens. Id. Therefore, we hold that the district court’s sanctions order was not an appealable final order.[13] Because appel *820 lants are unable to satisfy the threshold requirement of appellate jurisdiction, the appeal is DISMISSED.

. Rule 9011 is the bankruptcy equivalent of Rule 11 of the Federal Rules of Civil Procedure. See Miller v. Cardinale (In re DeVille), 361 F.3d 539, 550 n. 5 (9th Cir.2004). It allows a court to issue sanctions if, among other things, the court determines that a filing is "presented for any improper purpose, such as to harass or to cause unnecessary delay" or "the claims, defenses, and other legal contentions” in the filing are frivolous. Fed. R. Bankr.P. 9011(b) — (c).

. Section 1291 provides, in pertinent part:
The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, ... except where a direct review may be had in the Supreme Court.
28 U.S.C. § 1291.

. 28 U.S.C. § 158(d)(1) provides: "The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section.” Subsection (a) gives district courts jurisdiction to hear appeals from rulings by the bankruptcy court, and subsection (b) gives a bankruptcy appellate panel jurisdiction to hear such appeals. § 158(a), (b).

. In re Mason actually interpreted 28 U.S.C. § 1293 (repealed in 1984), the precursor to § 158. Id. at 1315. However, we have held that decisions regarding finality under former § 1293 are applicable to cases arising under § 158. Allen v. Old Nat’l Bank of Wash. (In re Allen), 896 F.2d 416, 418 n. 3 (9th Cir.1990) (per curiam). Thus, for ease of reference, we use § 158 in the opinion to refer to both § 158 and its repealed precursor, § 1293.

. Under this flexible approach to finality, we may deem a bankruptcy court order to be final and appealable if it (1) finally determines the discrete issue to which it is addressed and (2) resolves and seriously affects substantive rights, such that the losing party would suffer irreparable harm if the appeal could only be brought at the end of the entire bankruptcy case. Alexander v. Compton (In re Bonham), 229 F.3d 750, 761 (9th Cir.2000); see In re Mason, 709 F.2d at 1316-18.

. While commentators and other circuits have extolled the benefits of applying "liberalized rules of finality” under § 158(d) to cases arising under § 1291, see Graber, J., concurrence at 821-23, they provide little explanation of the legal basis for adopting those rules. See, e.g., A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1009 (4th Cir.1986) (declining to explain how the collateral order at issue met the Cohen test, because it "preferred]” to apply flexible finality principles).

. Our analysis of the finality of the sanctions order is limited to the standards that apply under § 1291; it should not be read to foreclose a different outcome to finality under § 158(d)(1).

. We did not have occasion to apply Cunningham to Rule 11 sanctions because we had determined well before Cunningham was decided that such sanctions were not collateral orders. See Kordich v. Marine Clerks Ass’n, 715 F.2d 1392, 1393 (9th Cir.1983) (per curiam).

. The concurrence argues that we should not apply Cunningham in the context of a district court sitting in bankruptcy, because Cunningham was a civil case. Graber, J., concurrence at 824. We disagree. Cunningham is applicable because it determines whether a category of orders similar to those at issue here is subject to interlocutory appeal under Cohen. Markus reached the same conclusion: it applied Cunningham to a district court’s sanctions order in a bankruptcy case arising under § 158(d) and concluded that the order was not immediately appealable. Markus, 313 F.3d at 1151.

. The Silar Parties, Counsel, and the concurrence argue that Markus is distinguishable because the sanctions order in Markus was issued in an adversary proceeding, whereas the sanctions order here was not issued in such a proceeding, and therefore is deemed to be a "contested matter.” Graber, J., concurrence at 824. Although this is indeed a distinction between this case and Markus, it does not affect the determination that the sanctions order here is not an appealable interlocutory order under the tests set forth in Cohen and Cunningham. Cunningham's determination that discovery sanctions are not completely separate from the merits of the underlying action is applicable regardless whether the proceeding in a specific case is an "adversary proceeding” (i.e., included in the list of adversary proceedings set forth in Federal Rule of Bankruptcy Procedure 7001) or a contested matter (i.e., not set forth in that list).

. The concurrence gets it backward in stating that our reliance on Cunningham is "unnecessary,” Graber, J., concurrence at 824, because the sanctions order here is not separable from the merits. To the contrary, we conclude that the sanctions order here is not separable from the merits because Cunningham so held. See Cunningham, 527 U.S. at 205, 119 S.Ct. 1915 (holding that "appellate review of a sanctions order” cannot "remain completely separate from the merits.”). But for Cunningham, the status of sanctions orders under this Cohen prong would be much murkier. See, e.g., Riverhead Sav. Bank v. Nat'l Mortg. Equity Corp., 893 F.2d 1109, 1114 (9th Cir.1990) (holding that a sanctions order was "separate from the merits of the case”).

. The Silar Parties’, Counsel’s, and the concurrence’s reliance on Stasz v. Gonzalez (In re Stasz), 387 B.R. 271 (9th Cir. BAP 2008), is misplaced. In holding that a civil contempt order is immediately appealable, Stasz determined it was not bound by Cunningham because in that case the Court considered discovery sanctions, not civil contempt orders. Id. at 275. Indeed, Cunningham expressly distinguished between these categories of orders based on the general characteristics of each category. See Cunningham, 527 U.S. at 207-08, 119 S.Ct. 1915(noting that ”[c]ivil contempt is designed to force the contemnor to comply with an order of the court,” while a discovery sanction “lacks any prospective effect and is not designed to compel compliance”) (internal quotation marks omitted). Thus, Cunningham answers the concurrence’s question: "civil contempt is one category, and other sanctions form another category,” regardless of the “procedural context” in which these respective orders arise. Graber, J., concurrence at 821 & n. 2 (emphasis added). Unlike the facts in Stasz, Cunningham's analysis is applicable here because we are faced with a sanctions order, not an order for civil contempt. See Markus, 313 F.3d at 1151.

. We reject the Silar Parties' and Counsel's alternative request that we treat their notices of appeal as petitions for mandamus. Mandamus is not appropriate in this case because the Silar Parties and Counsel have not shown that the district court clearly erred in issuing the sanctions order. "This factor alone is sufficient to deny mandamus.” Z-Seven *820 Fund, Inc. v. Motorcar Parts & Accessories, 231 F.3d 1215, 1219-20 (9th Cir.2000).