**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KLESTADT & WINTERS, LLP; TRACY
L. KLESTADT,
   *Petitioners-Appellants,*

    v.

DONNA CANGELOSI; CERTAIN DIRECT
LENDERS,
   *Respondents-Appellees,*

    and

WILLIAM A. LEONARD, Chapter 7
Trustee,
   *Trustee-Appellee.*

No. 10-16970

D.C. No.
09-32824-RCJ

BRYAN CAVE LLP; KATHERINE M.
WINDLER,
   *Petitioners-Appellants,*

    v.

DONNA CANGELOSI; CERTAIN DIRECT
LENDERS,
   *Respondents-Appellees,*

    and

WILLIAM A. LEONARD, Chapter 7
Trustee,
   *Trustee-Appellee.*

No. 10-16972

D.C. No. BK-S-
09-32824-RCJ

2549

SILAR ADVISORS, LP; SARA
PFROMMER; ROBERT LEEDS; JAY
GRACIN,
            *Petitioners-Appellants,*

                v.

DONNA CANGELOSI; CERTAIN DIRECT
LENDERS,
            *Respondents-Appellees,*

                and

WILLIAM A. LEONARD, Chapter 7
Trustee,
            *Trustee-Appellee.*

No. 10-16974
D.C. No.
BK-S-
09-32824-RCJ

OPINION

Appeals from the United States District Court
for the District of Nevada
Robert C. Jones, Chief District Judge, Presiding

Argued and Submitted
October 27, 2011—San Francisco, California

Filed March 6, 2012

Before: Susan P. Graber and Sandra S. Ikuta, Circuit Judges,
and Gordon J. Quist,* Senior District Judge.

Opinion by Judge Ikuta;
Concurrence by Judge Quist;
Partial Concurrence and Partial Dissent by Judge Graber

_____

*The Honorable Gordon J. Quist, Senior United States District Judge
for the Western District of Michigan, sitting by designation.

## COUNSEL

Stanley J. Panikowski (argued), DLA Piper LLP, San Diego, California, for petitioners-appellants Klestadt & Winters, LLP and Tracy Klestadt.

J. Stephen Peek, Holland & Hart LLP, Las Vegas, Nevada, for petitioners-appellants Bryan Cave LLP and Katherine Windler.

J. Thomas Beckett (argued), Mark W. Dykes, Parsons Behle & Latimer, Salt Lake City, Utah, for petitioners-appellants Silar Advisors LP, et al.

Robert M. Millimet (argued), Michael J. Collins, Bickel & Brewer, Dallas, Texas; Janet L. Chubb, Armstrong Teasdale LLP, Reno, Nevada; Lisa A. Rasmussen, Las Vegas, Nevada, for respondents-appellees Donna Cangelosi and Certain Direct Lenders.

## OPINION

IKUTA, Circuit Judge:

Silar Advisors, LP, Robert Leeds, Jay Gracin, and Sara P frommer (collectively "the Silar Parties"), and Tracy

Klestadt and Klestadt & Winters, LLP, Katherine M. Windler, and Bryan Cave, LLP (collectively "Counsel"), appeal the district court's order imposing sanctions on them pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure and the district court's inherent powers. We must decide whether the district court's order is immediately appealable. We hold that it is not and dismiss the appeal for lack of jurisdiction.

I

The Silar Parties are the owners and officers of Asset Resolution, LLC, which serviced loans that were funded in part by appellee lenders. Asset Resolution is the sole member and manager of fourteen special purpose limited liability companies. Asset Resolution and these special purpose companies (collectively "Debtors") have each filed a petition in bankruptcy. The appellees here are the lenders (now creditors in the bankruptcy proceeding) and the bankruptcy trustee, both of whom were awarded sanctions against the Silar Parties and Counsel.

Debtors' bankruptcy proceedings are the latest in a complicated series of legal proceedings involving these various parties. In 2007, before the bankruptcy proceedings commenced, the lenders and Silar Advisors' predecessor-in-interest began to dispute their respective rights to proceeds under the relevant loan servicing agreements. As a result, the lenders brought a lawsuit in Nevada district court to clarify their contractual rights under these servicing agreements. While this contract dispute was ongoing, Silar Advisors, which held a security interest in the disputed servicing agreements, foreclosed on its collateral and assigned its interest in the agreements to its newly formed subsidiary, Asset Resolution. Subsequently, the lenders added Silar Advisors and Asset Resolution as defendants in the contract dispute lawsuit.

During the summer of 2009, the Nevada district court presiding over the contract suit issued a series of orders regarding

the compensation owed to Asset Resolution under the disputed loan servicing agreements. Among other things, the orders awarded Asset Resolution substantially less than the full amount of servicing fees it had requested. In October 2009, Debtors filed chapter 11 petitions in the bankruptcy court for the Southern District of New York. This bankruptcy case was transferred to the bankruptcy court for the District of Nevada in November 2009. On January 25, 2010, the Nevada district judge presiding over the contract dispute entered an order withdrawing the reference for the entire bankruptcy case. Four days later, that Nevada district court, now sitting as a bankruptcy court, converted Debtors' chapter 11 bankruptcy filing to a chapter 7 proceeding.

On February 9, 2010, the lenders filed a motion for sanctions against the Silar Parties and Counsel. The district court granted the motion, holding that sanctions under Federal Rule of Bankruptcy Procedure 9011[1] and the court's inherent powers were appropriate because the underlying bankruptcy case was filed "for improper purposes and [was] frivolous." In support of this holding, the district court found that the Silar Parties "never had any intention or ability to reorganize" Asset Resolution, which was merely a "shell entity" without any assets to reorganize. Further, the Nevada district court found that Debtors' bankruptcy filing in the Southern District of New York was solely an attempt to evade the district court's jurisdiction and, specifically, the allegedly adverse impact of its orders over the summer of 2009.

The district court's sanctions order made the Silar Parties and Counsel jointly and severally liable for some $279,615 in

---

[1]Rule 9011 is the bankruptcy equivalent of Rule 11 of the Federal Rules of Civil Procedure. *See Miller v. Cardinale (In re DeVille)*, 361 F.3d 539, 550 n.5 (9th Cir. 2004). It allows a court to issue sanctions if, among other things, the court determines that a filing is "presented for any improper purpose, such as to harass or to cause unnecessary delay" or "the claims, defenses, and other legal contentions" in the filing are frivolous. Fed. R. Bankr. P. 9011(b)-(c).

sanctions, an amount based on the lenders' attorney's fees and expenses. The district court also ordered Counsel to disgorge its retainers ($300,000 each) received for filing and litigating the underlying bankruptcy case. The Silar Parties and Counsel appealed.

## II

**[1]** We have jurisdiction over appeals from a district court sitting in bankruptcy under 28 U.S.C. § 1291.[2] *Klenske v. Goo (In re Manoa Fin. Co.)*, 781 F.2d 1370, 1372 (9th Cir. 1986) (per curiam). Section 1291 provides that federal appellate courts, with certain exceptions not applicable here, "shall have jurisdiction of appeals from all final decisions of the district courts of the United States." A "final decision" is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). The Supreme Court has construed § 1291 slightly more broadly than its narrow language would suggest, holding that it gives appellate courts jurisdiction over a "small class" of interlocutory orders that are nevertheless appealable "final decisions." *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). These appealable collateral orders "must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978). "Because collateral jurisdiction requires all three elements, we lack collateral order jurisdiction if even one is not

---

[2]Section 1291 provides, in pertinent part:

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, . . . except where a direct review may be had in the Supreme Court.

28 U.S.C. § 1291.

met." *McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1140 (9th Cir. 2007).

The Silar Parties and Counsel do not claim that the sanctions order in this case meets Cohen's tests. Instead, they assert that we may hear their appeal of the sanctions order in light of the more flexible jurisdictional principles that apply in bankruptcy. *See Benny v. England (In re Benny)*, 791 F.2d 712, 718 (9th Cir. 1986) (recognizing that "the general standards for appealability of bankruptcy orders are broader and more flexible than those that apply to ordinary civil cases.").

**[2]** This argument overlooks the fact that the order in this case was issued by a district court sitting in bankruptcy. Our more flexible standard for interlocutory appeals in the bankruptcy context applies only to appeals from orders issued by a bankruptcy appellate panel or by a district court hearing an appeal from a bankruptcy court. *See Cannon v. Haw. Corp. (In re Haw. Corp.)*, 796 F.2d 1139, 1141 (9th Cir. 1986); *see, e.g., Congrejo Invs., LLC v. Mann (In re Bender)*, 586 F.3d 1159, 1163 (9th Cir. 2009). We have made this distinction because our jurisdiction over these two types of appeals arises from different statutes. We have jurisdiction to hear appeals from district courts sitting in bankruptcy under § 1291, but have jurisdiction to hear appeals from district courts reviewing bankruptcy court decisions under 28 U.S.C. § 158(d)(1),[3] as well as § 1291. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992). While § 1291 gives us jurisdiction only over "final decisions," the scope of § 158(d) is broader: it gives appellate courts the authority to hear appeals from "final decisions, judgments, orders, and decrees" entered by district

---

[3]28 U.S.C. § 158(d)(1) provides: "The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section." Subsection (a) gives district courts jurisdiction to hear appeals from rulings by the bankruptcy court, and subsection (b) gives a bankruptcy appellate panel jurisdiction to hear such appeals. § 158(a), (b).

courts. We have interpreted this jurisdictional grant to give us flexibility in asserting jurisdiction over interlocutory orders, because "certain proceedings in a bankruptcy case are so distinct and conclusive either to the rights of individual parties or the ultimate outcome of the case" that their resolution should be immediately appealable, even if such resolution does not end the entire litigation on the merits. *Mason v. Integrity Ins. Co. (In re Mason)*, 709 F.2d 1313, 1316-17 (9th Cir. 1983).[4] We recognized that because § 158 is an "appellate jurisdictional provision[ ] specifically designed for bankruptcy appeals," a flexible definition of finality in that context is in accord with Congress's intent to ensure prompt resolution of matters involving estate property. *In re Haw. Corp.*, 796 F.2d at 1142, n.1.[5]

[3] We have made clear, however, that these flexible jurisdictional principles "do *not* apply to [§ 1291] appeals from district judges sitting in bankruptcy." *In re Haw. Corp.*, 796 F.2d at 1141 (emphasis added). *Hawaii Corp.* considered the appealability of an order, issued by a district court sitting in bankruptcy, requiring the debtor's director to make an immediate transfer of certain stock to the bankruptcy trustee. *Id.* at 1140. Although the parties agreed that we had jurisdiction under the flexible finality rules enunciated in *Mason*, we dis-

---

[4]*In re Mason* actually interpreted 28 U.S.C. § 1293 (repealed in 1984), the precursor to § 158. *Id.* at 1315. However, we have held that decisions regarding finality under former § 1293 are applicable to cases arising under § 158. *Allen v. Old Nat'l Bank of Wash. (In re Allen)*, 896 F.2d 416, 418 n.3 (9th Cir. 1990) (per curiam). Thus, for ease of reference, we use § 158 in the opinion to refer to both § 158 and its repealed precursor, § 1293.

[5]Under this flexible approach to finality, we may deem a bankruptcy court order to be final and appealable if it (1) finally determines the discrete issue to which it is addressed and (2) resolves and seriously affects substantive rights, such that the losing party would suffer irreparable harm if the appeal could only be brought at the end of the entire bankruptcy case. *Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 761 (9th Cir. 2000); *see In re Mason*, 709 F.2d at 1316-18.

agreed. *Id.* at 1141. We held that *Mason*'s determination that Congress intended § 158 to give appellate courts more flexibility in asserting jurisdiction did not apply to § 1291, because there was no evidence that Congress retroactively intended to enlarge our jurisdiction under that statute with the passing of § 158. *Id.* at 1142 n.1. Accordingly, we rejected reliance on flexible finality when determining our jurisdiction to hear appeals from district courts sitting in bankruptcy, holding that these appeals, arising exclusively under § 1291, would be governed by the finality rule applicable to all civil appeals. *Id.* at 1141-42.

We disagree with the concurrence's suggestion that, notwithstanding § 1291 and *Cohen*, we should "simply treat jurisdiction of bankruptcy appeals under § 1291 in the same way that we treat bankruptcy appeals under § 158(d)(1)." Graber, J. concurrence at 2575. First, as the concurrence itself acknowledges, we are bound by our decision in *Hawaii Corp.*, and as a three-judge panel, we cannot overrule it. *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court.").

**[4]** But even if *Hawaii Corp.* were erased, we would remain bound by Supreme Court decisions interpreting the scope of § 1291's jurisdictional grant, because our power to hear appeals from district courts sitting in bankruptcy arises solely from that provision. We cannot expand our jurisdiction under § 1291 to match what we have under § 158(d), even when it arguably makes sense from a policy perspective. We have previously recognized this limitation. In *SEC v. Capital Consultants LLC*, the appellants argued that we should apply flexible finality principles to review interlocutory appeals arising in a receivership context because such cases raise the same policy concerns as bankruptcy appeals. 453 F.3d 1166, 1170 & n.4 (9th Cir. 2006) (per curiam). We held that we lacked the authority to do so because "Title 28 U.S.C. § 158

governs bankruptcy appeals . . . and provides the more 'flexible' approach to which appellants refer. Title 28 U.S.C. § 1291 governs here." *Id.* at 1170-71 n.4. Because § 1291 also governs appeals from orders issued by a district court sitting in bankruptcy, we are likewise precluded from applying the flexible approach allowed by § 158(d), regardless of the purported policy benefits of this approach.[6]

The Supreme Court has acknowledged that the strict requirement of finality under § 1291 may be harsh in some cases: "Many interlocutory decisions of a trial court may be of grave importance to a litigant, yet are not amenable to appeal at the time entered, and some are never satisfactorily reviewable." *Carroll v. United States*, 354 U.S. 394, 406 (1957). But Congress has not left parties without recourse in these situations. District courts may certify an interlocutory order for appeal, *see* 28 U.S.C. § 1292(b), or may enter final judgment "as to one or more, but fewer than all, claims or parties," Fed. R. Civ. P. 54(b). Thus in *Capital Consultants*, discussed above, we declined to apply flexible finality principles to evaluate an interlocutory order but nevertheless asserted jurisdiction over claims by the receivership claimants who had sought and received Rule 54(b) certification from the district court. 453 F.3d at 1170.

Relying on *Van Cauwenberghe v. Biard*, 486 U.S. 517 (1988), the concurrence argues that because a bankruptcy case is a bankruptcy case, whether arising under § 1291 or § 158(d), we have the authority to apply "a special rule of finality for a category of bankruptcy cases." Graber, J., concurrence at 2570. This misinterprets Supreme Court prece-

---

[6]While commentators and other circuits have extolled the benefits of applying "liberalized rules of finality" under § 158(d) to cases arising under § 1291, *see* Graber, J., concurrence at 2571-73, they provide little explanation of the legal basis for adopting those rules. *See, e.g., A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1009 (4th Cir. 1986) (declining to explain how the collateral order at issue met the *Cohen* test, because it "prefer[red]" to apply flexible finality principles).

dent, which holds that a "category" is a type of judicial order, not a substantive area of law. In *Van Cauwenberghe*, the Court held that an order denying a motion to dismiss on the ground of forum non conveniens was not immediately appealable under *Cohen*, because in general "the question of the convenience of the forum is not completely separate from the merits of the action." 486 U.S. at 527 (quoting *Coopers & Lybrand*, 437 U.S. at 468). The Court acknowledged that this reasoning might not be correct in every case: sometimes, the forum non conveniens determination is separate from the merits and in those cases "an immediate appeal might result in substantial savings of time and expense for both the litigants and the courts." *Id.* at 529. Nevertheless, the Court rejected a case-by-case appealability determination, stating that "[i]n fashioning a rule of appealability under § 1291," courts must "look to categories of cases, not to particular injustices." *Id.*; *see also Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 439 (1985). By holding that determinations of forum non conveniens are not immediately appealable regardless of the legal context or facts of a particular case, the Supreme Court made clear that a determination of appealability applies to claims involving the same type of orders, not to claims arising in the same area of substantive law. *See, e.g., Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599, 605-06 (2009) (holding that all disclosure orders adverse to the attorney-client privilege are not immediately appealable); *Richardson-Merrell*, 472 U.S. at 439 (holding the same for orders disqualifying counsel).

Under the concurrence's interpretation of *Van Cauwenberghe*, by contrast, different jurisdictional rules would apply to different substantive areas of law. If a court can adopt "a special rule of finality for a category of bankruptcy cases," Graber, J., concurrence at 2570, then it may also adopt special rules of finality for the category of antitrust cases or the category of securities cases. This means, for example, that a forum non conveniens determination might be immediately appealable in an antitrust case, but not in a securities case. No Supreme Court decision supports this approach.

### III

Because our jurisdiction in this case does not arise under § 158(d)(1), the test for flexible finality set forth in *Mason* is inapplicable.[7] Therefore, we must consider whether the district court's sanctions order, issued under both Rule 9011 and the court's inherent power, meets *Cohen*'s three-prong test.

### A

The Supreme Court has given us guidance on how we should apply *Cohen* to determine the immediate appealability of a sanctions order. *See Cunningham v. Hamilton County, Ohio*, 527 U.S. 198 (1999). In *Cunningham*, a magistrate judge determined that an attorney had flouted discovery orders by, among other things, failing to produce required documents and providing insufficient responses to interrogatories. *Id.* at 200-01. Relying on Federal Rule of Civil Procedure 37(a), which allows a court to sanction a party or attorney that fails to cooperate in discovery, the magistrate judge ordered the attorney to pay the relevant attorneys' fees and costs of the opposing party. *Id.* at 201. The district court affirmed the order and the attorney immediately appealed. *Id.* at 201-02. The Sixth Circuit dismissed the appeal for lack of jurisdiction. *Id.* at 202.

**[5]** The Supreme Court affirmed. *Id.* at 203. The Court first held that a sanction order "neither ended the litigation nor left the court only to execute its judgment." *Id.* at 204. Turning to *Cohen*'s three-prong test, the Court held that the discovery sanction did not fall into the "small category of orders" that are immediately appealable because, among other reasons, appellate review of a discovery sanction generally cannot remain completely separate from the merits of the underlying

---

[7]Our analysis of the finality of the sanctions order is limited to the standards that apply under § 1291; it should not be read to foreclose a different outcome to finality under § 158(d)(1).

action. *Id.* at 205. The Court reasoned that "[a]n evaluation of the appropriateness of sanctions may require the reviewing court to inquire into the importance of the information sought or the adequacy or truthfulness of a response." *Id.* This sort of inquiry, the Court held, "would differ only marginally from an inquiry into the merits and counsels against application of the collateral order doctrine." *Id.* at 206. While acknowledging that some discovery sanctions might not be "inextricably intertwined with the merits" of a case, the Court rejected "a case-by-case approach to deciding whether an order is sufficiently collateral." *Id.*

Our cases have recognized that the logic of *Cunningham* applies equally to other types of sanctions. In *Stanley v. Woodford*, a district court sanctioned an attorney for willfully disobeying a court order prohibiting the attorney from making further appearances in a certain case. 449 F.3d 1060, 1062 (9th Cir. 2006). We applied *Cunningham* to hold that the sanctions order was not a collateral order. *Id.* at 1064-65. Although the district court in *Stanley* issued the sanctions order under its inherent powers and 28 U.S.C. § 1927 (allowing sanctions for vexatious litigation tactics), we held that "the policies undergirding Rule 37(a) sanctions are not relevantly different from those justifying sanctions under § 1927 or a court's inherent powers," and that *Cunningham* should be construed as "applying more broadly than to Rule 37(a) sanctions alone." *Id.* at 1064. In reaching this conclusion, we relied on other cases, both in and out of our circuit, that did not "distinguish between types of sanctions" when applying *Cunningham* to bar immediate review of their respective sanctions orders. *Id.* at 1065; *see, e.g., Cato v. Fresno City*, 220 F.3d 1073, 1074 (9th Cir. 2000) (per curiam) (applying *Cunningham* to bar immediate review of sanctions imposed under Federal Rule of Civil Procedure 16(f), which authorizes a court to impose sanctions for noncompliance with scheduling or pretrial conference orders); *Williams v. Midwest Employers Cas. Co.*, 243 F.3d 208, 208-09 (5th Cir. 2001) (holding the same for a sanctions order under Federal Rule of Civil Proce-

dure 11).**⁸** Similarly, in *Markus v. Gschwend (In re Markus)*, we relied on *Cunningham* to hold that a bankruptcy court's Rule 9011 sanctions order issued against an attorney who filed a frivolous motion was not a collateral order. 313 F.3d 1146, 1151 (9th Cir. 2002).

### B

**[6]** Our precedents applying *Cunningham* to various sanctions orders effectively decide this case.**⁹** We have already decided that the reasoning in *Cunningham* precludes us from hearing immediate appeals of sanctions orders under a court's inherent powers, *see Stanley*, 449 F.3d at 1065, or under Rule 9011, *see Markus*, 313 F.3d at 1151. Although neither *Stanley* (which did not arise in a bankruptcy context) nor *Markus* (which considered our jurisdiction under § 158, rather than § 1291) is identical to the case before us, the distinctions are not material. The inherent authority of a district court to impose sanctions does not change when it is sitting in bankruptcy, given that a court draws its inherent power by nature of its status as a court of justice, rather than from the type of case it is hearing. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284 (9th Cir. 1996). Similarly, a sanctions order under Rule 9011 advances the same policy whether it is issued by a bankruptcy court as in *Markus* or, as

---

**⁸**We did not have occasion to apply *Cunningham* to Rule 11 sanctions because we had determined well before *Cunningham* was decided that such sanctions were not collateral orders. *See Kordich v. Marine Clerks Ass'n*, 715 F.2d 1392, 1393 (9th Cir. 1983) (per curiam).

**⁹**The concurrence argues that we should not apply *Cunningham* in the context of a district court sitting in bankruptcy, because *Cunningham* was a civil case. Graber, J., concurrence at 2576. We disagree. *Cunningham* is applicable because it determines whether a category of orders similar to those at issue here is subject to interlocutory appeal under *Cohen. Markus* reached the same conclusion: it applied *Cunningham* to a district court's sanctions order in a bankruptcy case arising under § 158(d) and concluded that the order was not immediately appealable. *Markus*, 313 F.3d at 1115.

here, by a district court sitting in bankruptcy. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (identifying the central policy goal of Rule 11 as "deter[ring] baseless filings"). Therefore, the logic of *Stanley* and *Markus* is equally applicable here.[10]

Moreover, the reasoning in *Cunningham*, that discovery sanctions are not completely separate from the merits of the underlying action, applies to this case as well.[11] As noted above, the district court imposed the order on the Silar Parties on the ground that Debtors' bankruptcy petition was frivolous and filed for an improper purpose. But the parties vigorously dispute this issue. First, the Silar Parties allege that the filing was not frivolous because Asset Resolution was not in fact an empty shell company. Rather, it could be properly reorganized because it owned several assets, including fractional

---

[10]The Silar Parties, Counsel, and the concurrence argue that *Markus* is distinguishable because the sanctions order in *Markus* was issued in an adversary proceeding, whereas the sanctions order here was not issued in such a proceeding, and therefore is deemed to be a "contested matter." Graber, J., concurrence at 2576. Although this is indeed a distinction between this case and *Markus*, it does not affect the determination that the sanctions order here is not an appealable interlocutory order under the tests set forth in *Cohen* and *Cunningham*. *Cunningham*'s determination that discovery sanctions are not completely separate from the merits of the underlying action is applicable regardless whether the proceeding in a specific case is an "adversary proceeding" (i.e., included in the list of adversary proceedings set forth in Federal Rule of Bankruptcy Procedure 7001) or a contested matter (i.e., not set forth in that list).

[11]The concurrence gets it backward in stating that our reliance on *Cunningham* is "unnecessary," Graber, J., concurrence at 2576, because the sanctions order here is not separable from the merits. To the contrary, we conclude that the sanctions order here is not separable from the merits because *Cunningham* so held. *See Cunningham*, 527 U.S. at 205 (holding that "appellate review of a sanctions order" cannot "remain completely separate from the merits."). But for *Cunningham*, the status of sanctions orders under this *Cohen* prong would be much murkier. *See, e.g., Riverhead Sav. Bank v. Nat'l Mortg. Equity Corp.*, 893 F.2d 1109, 1114 (9th Cir. 1990) (holding that a sanctions order was "separate from the merits of the case").

real property interests in many of the properties that were subject to the loan servicing agreements, claims for servicing fees, and third-party tort claims. Second, the Silar Parties and Counsel argue that the bankruptcy filing was proper because bankruptcy's automatic stay would prevent harmful tax foreclosures on some of these serviced properties. Third, they argue that the bankruptcy rules provided procedural advantages necessary for achieving proper resolution of the ongoing contract litigation between Silar Advisors, Asset Resolution, and the lenders. Finally, they argue that filing for bankruptcy in New York was not an attempt to evade the Nevada District Court's jurisdiction because Nevada was an improper venue at the time of its filing.

While the lenders disagree on all these issues, we cannot resolve these questions without carefully inquiring into all aspects of the Silar Parties' financial and legal position leading up to the bankruptcy filing, as well as assessing the attendant benefits of filing for bankruptcy given those positions. Like the evaluation of discovery sanctions in *Cunningham*, such appellate review "would differ only marginally from an inquiry into the merits" of the bankruptcy proceeding and thus "counsels against application of the collateral order doctrine." 527 U.S. at 206.

**[7]** Because the sanctions order here is not completely separate from the merits of the underlying bankruptcy case, it does not meet the *Cohen* test. *See McElmurry*, 495 F.3d at 1140. We therefore conclude that the sanctions order issued by the district court sitting in bankruptcy, whether supported by the district court's inherent powers or Rule 9011, was not an appealable collateral order.[12]

---

[12]The Silar Parties', Counsel's, and the concurrence's reliance on *Stasz v. Gonzalez (In re Stasz)*, 387 B.R. 271 (B.A.P. 9th Cir. 2008), is misplaced. In holding that a civil contempt order is immediately appealable, *Stasz* determined it was not bound by *Cunningham* because in that case the Court considered discovery sanctions, not civil contempt orders. *Id.* at

IV

**[8]** We recognize "the hardship that a sanctions order may sometimes impose on an attorney." *Cunningham*, 527 U.S. at 209-10. Nevertheless, we are bound by the Court's conclusion that an "expansive interpretation of § 1291's 'final decision' requirement" is not the preferred solution for alleviating such burdens. *Id*. Therefore, we hold that the district court's sanctions order was not an appealable final order.[13] Because appellants are unable to satisfy the threshold requirement of appellate jurisdiction, the appeal is **DISMISSED**.

QUIST, Senior District Judge, concurring:

All judges on the panel, including the undersigned, agree that Ninth Circuit precedent, particularly *Cannon v. Hawaii Corp. (In re Hawaii Corp.)*, 796 F.2d 1139 (9th Cir. 1986), requires this Court to dismiss this appeal because appellants

275. Indeed, *Cunningham* expressly distinguished between these categories of orders based on the general characteristics of each category. *See Cunningham*, 527 U.S. at 207-08 (noting that "[c]ivil contempt is designed to force the contemnor to comply with an order of the court," while a discovery sanction "lacks any prospective effect and is not designed to compel compliance") (internal quotation marks omitted). Thus, *Cunningham* answers the concurrence's question: "civil contempt *is* one category, and other sanctions form another category," regardless of the "procedural context" in which these respective orders arise. Graber, J., concurrence at 2571 & n.2 (emphasis added). Unlike the facts in *Stasz*, *Cunningham*'s analysis is applicable here because we are faced with a sanctions order, not an order for civil contempt. *See Markus*, 313 F.3d at 1151.

[13]We reject the Silar Parties' and Counsel's alternative request that we treat their notices of appeal as petitions for mandamus. Mandamus is not appropriate in this case because the Silar Parties and Counsel have not shown that the district court clearly erred in issuing the sanctions order. "This factor alone is sufficient to deny mandamus." *Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1219-20 (9th Cir. 2000).

"are unable to satisfy the threshold requirement of appellate jurisdiction." In my judgment, once appellants fail to satisfy this threshold issue, the case is concluded—subject, of course, to whether the Ninth Circuit revisits the continuing viability of *In re Hawaii Corp.* As to whether the rule of *In re Hawaii Corp.* should be revisited or changed is not for me to say. If the rule of *In re Hawaii Corp.* is changed *en banc*, the issue of appellate jurisdiction can be revisited under the facts of this particular case, which are accurately set forth in Part I of Judge Ikuta's Opinion.

---

GRABER, Circuit Judge, concurring in part and in the judgment, and dissenting in part:

I concur in the majority's holding that our jurisdiction arises solely from 28 U.S.C. § 1291, not 28 U.S.C. § 158(d)(1). As a result, I also must agree that we cannot examine the finality of the sanctions order under the flexible approach that typically applies to bankruptcy appeals. *Cannon v. Haw. Corp. (In re Haw. Corp.)*, 796 F.2d 1139, 1141-42 (9th Cir. 1986). But I write separately because I disagree with the rule announced in *Hawaii Corp.* and because, although I agree with the majority's finality conclusion under § 1291, I disagree with the analysis in Parts III.A-B.

### A.

Six years after we decided *Hawaii Corp.*, we reexamined and reaffirmed its holding that the flexible finality approach used in bankruptcy appeals arises under § 158(d)(1), making it unavailable for an appeal that arises solely under § 1291. *Vylene Enters., Inc. v. Naugles, Inc. (In re Vylene Enters., Inc.)*, 968 F.2d 887, 893 (9th Cir. 1992). In *Vylene Enterprises*, we recognized that our rule was inconsistent both with a leading treatise and with the implications of a then-recent Supreme Court decision. *Id.* at 892 (noting disagreement

between Ninth Circuit precedent and *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 252-53 (1992), and 16 Charles A. Wright et al., *Federal Practice and Procedure* § 3926, at 119 (Supp. 1991)[1]). As we said in *Vylene Enterprises*, "*Hawaii Corp.* unequivocally requires us to apply different finality standards depending on which statute affords jurisdiction." *Id.* at 893.

In my view, *Hawaii Corp.* was wrongly decided.

1.

*Hawaii Corp.* is unconvincing on its own terms. For instance, the panel worried that the inquiry as to whether an appeal is or is not in a bankruptcy case could be "difficult" and create a practical "problem." 796 F.2d at 1142 n.1. Not so. A bankruptcy case is commenced by filing a bankruptcy petition. 11 U.S.C. §§ 301-303. It does not become something other than a bankruptcy case even if ordinary contract claims (for example) must be resolved in the course of the proceeding. A civil action (or adversary proceeding) is commenced by filing a complaint. Fed. R. Civ. P. 3; Fed. R. Bankr. P. 7003. It does not become something other than a civil action even if (for example) a party files for bankruptcy and the case proceeds, with or without substitution of the trustee, upon lifting the automatic stay. The inquiry is straightforward and uncomplicated, as all our sister circuits to have confronted the issue have recognized.

---

[1]The current version of the treatise states:

> Only the Ninth Circuit has refused to apply expanded bankruptcy concepts of finality when an order is entered by the district court acting in bankruptcy. The better rule, followed by other circuits, is that in bankruptcy proceedings § 1291 finality should be treated the same way as § 158(d) finality.

16 Charles A. Wright et al., *Federal Practice and Procedure* § 3926.2, at 115 n.26 (2d ed. Supp. 2011).

The other rationale underlying the *Hawaii Corp.* rule was the concern that a contrary holding would amount to treating the adoption of the Bankruptcy Code as "an implied, retroactive amendment of 28 U.S.C. § 1291 enlarging our jurisdiction beyond the bounds of established finality principles." 796 F.2d at 1142 n.1. But "[i]n fashioning a rule of appealability under § 1291, . . . we look to categories of cases." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988). Thus, it is proper and prudent to adopt a special rule of finality for a category of bankruptcy cases. The Bankruptcy Code and its associated framework of appellate jurisdiction surely counsel in favor of that approach.

Contrary to the majority's assertion, maj. op. at 2560-61, my view (and the view of every circuit except ours) is consistent with *Van Cauwenberghe*. There, in considering the finality of an order denying a motion to dismiss on grounds of *forum non conveniens*, the Supreme Court wrote:

> It is thus undoubtedly true that in certain cases, the *forum non conveniens* determination will not require significant inquiry into the facts and legal issues presented by a case, and an immediate appeal might result in substantial savings of time and expense for both the litigants and the courts. In fashioning a rule of appealability under § 1291, however, we look to *categories of cases, not to particular injustices*. See *Carroll v. United States*, 354 U.S. 394, 405 (1957) ("Appeal rights cannot depend on the *facts of a particular case*")[.]

*Van Cauwenberghe*, 486 U.S. at 529 (emphases added).

To be sure, "categories of cases" exist in the eye of the beholder. The Supreme Court's discussion in *Van Cauwenberghe* does not explain exactly how to decide what constitutes a "category." In my view, though, the best reading of that passage is that the "finality" determination stands inde-

pendent of the *facts and equities* of a particular case, but still allows the court to categorize an order in light of its *procedural context*. Under that reading, the category of sanctions orders in civil cases does not overlap with the category of sanctions orders in main bankruptcy cases.[2]

### 2.

I am not alone in my view of *Hawaii Corp*. In the two-and-a-half decades since we issued our opinion, no other circuit has agreed with us. The Third Circuit, for example, has rejected our reasoning and concluded that § 1291 jurisdiction "mirrors" jurisdiction under § 158(d). *Metro Transp. Co. v. N. Star Reinsurance Co.*, 912 F.2d 672, 676 (3d Cir. 1990) (citing *United States v. Nicolet, Inc.*, 857 F.2d 202, 205 (3d Cir. 1988)). In *Nicolet*, the Third Circuit observed that, "[i]n fashioning rules of appealability under section 1291, the courts' focus should lie on 'categories of cases' rather than mere case labels." 857 F.2d at 205 (quoting *Van Cauwenberghe*, 486 U.S. at 529).

The Fifth Circuit has similarly rejected the *Hawaii Corp.* approach:

> [B]ecause of considerations unique to bankruptcy appeals—such as the protracted nature of bankruptcy proceedings and the large number of parties interested in them—courts have applied liberalized rules of finality for bankruptcy appeals. The appellees, citing *Matter of Hawaii Corp.*, argue that these liberalized rules apply only to appeals from a district

---

[2]The majority appears to lump together all sanctions orders, no matter the type of sanction, the context, or the nature of the case. Maj. op. at 2564 n.9, 19 n.10. On the other hand, the majority also distinguishes between civil contempt and other kinds of sanctions. Maj. op. at 2566-67 n.12. Does this mean that civil contempt is one category, and other sanctions form another category? I think that *Van Cauwenberghe* plainly permits the latter, just as it permits the categorization that I have suggested.

court's review of a bankruptcy court's decision pursuant to 28 U.S.C. § 158(d) ("Section 158(d)"), not to appeals from a district court sitting in bankruptcy pursuant to Section 1291. Other circuits, however, have refused to follow *Matter of Hawaii Corp.* . . . We too see no reason to apply different rules of finality for Section 1291 appeals, and will apply the same rules that we apply to Section 158(d) appeals.

*Cajun Electric Power Coop., Inc. v. Cent. La. Electric Co. (In re Cajun Electric Power Coop., Inc.)*, 69 F.3d 746, 747-48 (5th Cir. 1995), *as amended*, 74 F.3d 599 (9th Cir. 1996) (citing *Tringali v. Hathaway Mach. Co.*, 796 F.2d 553, 558 (1st Cir. 1986); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1009 (4th Cir. 1986); *In re UNR Indus., Inc.*, 725 F.2d 1111, 1115 (7th Cir. 1984)).

The Second Circuit has reached a similar conclusion:

Our cases appear not to have addressed the question of whether the standards for determining finality under Section 158(d) apply to bankruptcy appeals under Section 1291 or whether resort must be had to the principles established in *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541 (1949). We perceive nothing to be gained by creating a second set of standards —which, when painstakingly developed, might not differ significantly from those already in place under Section 158(d)—for reviewing identical cases. We therefore follow the Third Circuit in holding that decisions regarding finality under Section 158(d) apply under Section 1291.

*Sonnax Indus., Inc. v. Tri Component Products Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1283 (2d Cir. 1990) (citing *Nicolet*, 857 F.2d at 205).

Finally, the First Circuit has "held that interpretation of the word 'final' in appeal of bankruptcy proceedings should not

depend on whether jurisdiction is invoked under 28 U.S.C. § 1291 or § 1293(b) (currently 28 U.S.C. § 158(d))." *In re Spillane*, 884 F.2d 642, 644 n.1 (1st Cir. 1989).

In view of this substantial contrary authority, commentators agree that the Ninth Circuit's unique position is imprudent.

> The courts generally agree that in this context the term "final" in section 1291 should be construed just as it is in section 158, but the Ninth Circuit holds to the contrary.

> The majority view is more persuasive. As reflected in the case law developed from decisions such as *Cohen* . . . , the courts have found section 1291 adaptable to the concerns presented by varying litigative contexts. There is no reason not to expect similar responsiveness in bankruptcy. More fundamentally, . . . any defensible modification of general finality principles for use in bankruptcy derives from the number and interrelationships of the disparate disputes each case may encompass. Those complexities obtain regardless of the forum in which the litigation begins. Adhering to a single notion of finality at least avoids another layer of complexity.

John P. Hennigan, Jr., *Toward Regularizing Appealability in Bankruptcy*, 12 Bankr. Dev. J. 583, 598 (1996) (footnotes omitted); *see also* Sarah E. Vickers, Comment, *Interlocutory Appeals in Bankruptcy Cases: The Conflict Between Judicial Code Sections 158 and 1292*, 8 Bankr. Dev. J. 519, 531 (1991) ("No policy goal justifies penalizing litigants for bringing their cases initially before the district court. . . . In addition, the Supreme Court's guidance in focusing on 'categories of cases' should outweigh focusing on where the case originated. Finally, it should be noted that the Ninth Circuit is apparently alone in its view on this subject.").

### 3.

Indeed, our analysis of finality under the usual § 1291 standards, as required by *Hawaii Corp.*, amply demonstrates the flawed nature of that rule. In resolving this appeal, we ask whether the sanctions order here falls under the collateral order exception identified in *Cohen*, 337 U.S. at 546. "The requirements for collateral order appeal have been distilled down to three conditions: that an order [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a *final judgment*." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (internal quotation marks omitted) (alterations in original) (emphasis added).

The third prong of this test shows that the collateral order doctrine is ill-suited to application in the bankruptcy context. It is not clear to me what, exactly, constitutes a "final judgment" in a bankruptcy case: "Unlike an adversary proceeding or a civil action outside bankruptcy, the culmination of [a] bankruptcy case does not result in a final judgment." *Stasz v. Gonzalez (In re Stasz)*, 387 B.R. 271, 276 (B.A.P. 9th Cir. 2008).

In the absence of a final judgment, perhaps we must look for something procedurally analogous. One close match would be the final order approving distribution of funds under chapter 7 of the Bankruptcy Code. Once that order issues, though, the heart of a bankruptcy case—the debtor's assets—will have disappeared, pro-rata, into a multitude of hands, precluding effective review of most, if not all, questions involving those assets. *Cf. Riverhead Sav. Bank v. Nat'l Mortg. Equity Corp.*, 893 F.2d 1109, 1114 (9th Cir. 1990) (concluding that, where an order required immediate payment of money to a likely insolvent entity, review of that order "effectively would be denied if return of the money awarded were impossible"). Thus, the collateral order doctrine is simply not helpful for determining finality in the bankruptcy context; the

flexible approach developed under § 158(d)(1) seems far more appropriate.

Sufficient finality might also arise from other types of orders. Certainly, dismissal of a bankruptcy petition is final. But a meritorious motion to dismiss a chapter 11 petition may, at the court's discretion, be resolved by conversion to chapter 7. 11 U.S.C. § 1112(b). When a party succeeds on a motion to dismiss, but the court converts the case, is that result any less final than if the court had dismissed the petition? Formally, yes. Functionally, it is not so clear. Although the bankruptcy case would still be pending and open, control of the debtor would have changed hands, from management of the debtor-in-possession to a chapter 7 trustee. For some types of decisions, that change of control might impart sufficient finality; for others, perhaps not. I have little doubt that identifying a final judgment analogue would be just as difficult for cases under other chapters of the Bankruptcy Code. In view of those difficulties, a more flexible approach seems prudent in all bankruptcy appeals, regardless of where they originate.

At the very least, the lack of a clear "final judgment" in a main bankruptcy case means we will need to decide precisely what "categories" of bankruptcy orders are sufficiently final. This inquiry might well lead to the development of rules that parallel the flexible approach already developed under § 158(d)(1). The better solution, in my view, is to simply treat jurisdiction of bankruptcy appeals under § 1291 in the same way that we treat bankruptcy appeals under § 158(d)(1).

In short, I see no convincing justification for continuing to disagree with our sister circuits; we should reevaluate *Hawaii Corp.*'s lonely rule en banc.

### B.

As a final matter, in applying the three-pronged collateral order test to the sanctions order in this case, the majority

relies on *Cunningham v. Hamilton County*, 527 U.S. 198 (1999). I dissent from that part of the analysis, in Parts III.A-B, for two reasons.

First, it is unnecessary; as the majority correctly states at the end of Part III.B, the sanctions order fails to meet the second prong of the collateral order test, which requires that the issue be separable from the merits. That observation alone is sufficient to decide the issue.

Second, for the reasons identified by this circuit's Bankruptcy Appellate Panel, I see a material distinction between a main bankruptcy case, like this one, and the civil cases cited by the majority. *See In re Stasz*, 387 B.R. at 274-76. The majority cites only one bankruptcy case, *Markus v. Gschwend (In re Markus)*, 313 F.3d 1146 (9th Cir. 2002). That case involved an adversary proceeding, which is more like a traditional civil case than it is like a main bankruptcy case. I would adopt the reasoning from *Stasz*, including its reasonable distinctions between this situation and the situation in *Markus* and *Cunningham*. Accordingly, I do not join the majority opinion where it diverges from *Stasz* and holds that *Cunningham* applies to a main bankruptcy case.

## C.

For the reasons stated above, I dissent in part, and concur in part and in the judgment. But I hope that my colleagues will take this opportunity to reexamine the wisdom of the rule established in *Hawaii Corp.*