**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. AZ-19-1156-STaF |
| ERLING S. CALKINS and ELAINE S. CALKINS, | Bk. No. 3:13-bk-08354-DPC |
| Debtors. | |
| ERLING S. CALKINS, | |
| Appellant, | |
| v. | **MEMORANDUM**<sup>*</sup> |
| SOUTHERN CALIFORNIA CONFERENCE OF SEVENTH-DAY ADVENTISTS, as Trustee, | |
| Appellee. | |

Argued and Submitted on May 20, 2020

Filed – June 4, 2020

---

<sup>*</sup> This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Daniel P. Collins, Bankruptcy Judge, Presiding

———

Appearances:    Appellant Erling S. Calkins argued pro se; Thomas P.
Kack of Musgrove Drutz Kack & Flack, PC argued for
appellee.

———

Before: SPRAKER, TAYLOR, and FARIS, Bankruptcy Judges.

## INTRODUCTION

After years of litigation, and a disputed prior settlement, appellant Chapter 11[1] debtor Erling S. Calkins entered into a settlement stipulation with appellee, the Southern California Conference of Seventh Day Adventists, a non-profit California corporation ("SCC") ("2016 Settlement"). The bankruptcy court approved the 2016 Settlement, which provided for arbitration of certain specified issues referred to as the "Reserved Issues." The parties waived or released all other disputes. The parties proceeded to arbitration, where the arbitrator duly decided all of the Reserved Issues and entered a final award in favor of SCC.

The bankruptcy court confirmed the arbitration award with two

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

minor corrections and enforced the 2016 Settlement. In that process the court held that the parties had settled all disputes other than the Reserved Issues. Calkins disagrees with the scope of the Reserved Issues as interpreted by both the arbitrator and the bankruptcy court. He maintains that he intended to settle nothing by way of the 2016 Settlement but instead to arbitrate "all disputes," not just the Reserved Issues. Calkins alternately claims that the bankruptcy court erred in failing to vacate the arbitration award on a number of other grounds. However, there is no support in the record for any of the arguments Calkins has raised on appeal. He also referenced in his notice of appeal several other bankruptcy court orders, but his appeal brief wholly failed to address these other orders. Accordingly, we AFFIRM.

## FACTS

### A.    The parties' dispute and the 2011 settlement.

For over a decade, Calkins has been engaged in litigation with SCC, its predecessors, and its affiliates. The parties' dispute arose from a trust ("Trust") settled by Calkins' parents and naming as trustee SCC's predecessor, the Southern California Association of Seventh Day Adventists, a California non-profit corporation ("SCA"). It also arose from a 1999 California conservatorship proceeding, in which Calkins was appointed to serve as conservator for his mother. When she passed away in 2007, the conservatorship proceeding was superseded by a probate

proceeding ("Probate Action"). Each side has claimed that the other has engaged in misconduct while acting in their representative capacities. According to SCC, Calkins used conservatorship assets to purchase two parcels of real property, which he transferred to a company that he and his wife owned ("Properties").[2]

In 2011, the parties entered into a settlement of their disputes ("2011 Settlement"). Among other things, the parties agreed that Calkins would become the new trustee under the Trust and that Calkins would also become executor of his mother's probate estate. In addition, the Properties would be sold and the conservatorship closed, at which point the net proceeds from the conservatorship would be funded to the Trust, and any Trust funds in excess of those necessary to pay Trust closing costs (including certain attorney's fees) would be paid to the Trust beneficiaries.

## B. New disputes, Calkins' bankruptcy, the 2016 Settlement, and plan confirmation.

Despite the 2011 Settlement, Calkins continued to fight. Calkins challenged SCC's corporate status, its authority to act as the trustee under the Trust, and hence its authority to enter into the 2011 Settlement. This challenge stemmed from SCC's use of different names to identify itself. It

---

[2] Calkins' allegations against SCC and its affiliates are both broader and much less clearly defined in the record. Among other things, he has alleged that SCC and its predecessors mismanaged the Trust's assets, overspent on attorney's fees while litigating with him, and have improperly acted through unlicensed or insufficiently licensed entities.

4

alternately referred to itself as the Southern California Conference Association of Seventh Day Adventists, SCC-SDA Conferences, Southern California Association of Seventh Day Adventists, and Southern California Conference of Seventh Day Adventists. In fact, a number of these alternate names were listed as signatories to the 2011 Settlement, even though they apparently were not distinct legal entities from SCC.

When Calkins and his wife filed their chapter 11 bankruptcy petition in 2013, the litigation between the parties continued in an adversary proceeding. SCC also opposed Calkins' reorganization efforts by, among other things, objecting to his disclosure statement and moving to dismiss or convert his bankruptcy case. At the time, there also was pending litigation in the Probate Action, in the Humboldt County Superior Court.

This led to the 2016 Settlement, pursuant to which the parties agreed to terminate their then-pending litigation. More specifically, the parties "agreed to settle all disputes above and any and all other disputes and differences" subject to the terms of their stipulation. Those terms included the sale of the Properties and an agreement to arbitrate, on request, the Reserved Issues. As Calkins explained in his application for approval of the compromise, the 2016 Settlement provided a significant benefit to him and his bankruptcy estate because, "[t]he Stipulation between these parties will remove the impediment to Plan Confirmation and allow Calkins to reorganize."

The unequivocal purpose of arbitrating the Reserved Issues was to determine who was entitled to proceeds from sale of the Properties ("Sale Proceeds"). As specified in the 2016 Settlement: "In the event there are Sale Proceeds deposited in [Calkins' bankruptcy counsel's] client trust account, then, within thirty (30) days thereafter, either Party may request arbitration and arbitration will be scheduled and held" in accordance with the 2016 Settlement's terms. The purpose of the Reserved Issues was further reflected in the settlement terms explaining what would occur if an arbitration was not timely requested:

> The right to request an arbitration including raising or disputing SCC's right to continue as Trustee or to dispute its actions as Trustee shall be forever waived if an arbitration is not requested within thirty (30) days as provided in the opening paragraph of No. 6 above. *In the event arbitration is not timely requested, then [Calkins' bankruptcy counsel] shall pay the Sales Proceeds to SCC, as Trustee of the Trust. If SCC is no longer the Trustee, then said proceeds shall be paid to the Successor Trustee.*

2016 Settlement at 5:18-24 (emphasis added).

The Reserved Issues themselves also reflected this purpose. The 2016 Settlement identified the Reserved Issues as follows:

> The arbitrator will determine the following: [1] The enforceability of the [2011 Settlement] provisions; [2] the legal corporate status of SCC or its predecessors during the lives of Erling E. [a]nd Ellie K. Calkins, the makers of the Trust; [3] who shall act as Trustee from and after the arbitration hearing; [4] who will receive distribution of the Sale Proceeds from

6

Allan NewDelman's client trust account, [5] what attorneys' fees, costs and expenses, if any, will be paid from the Sales Proceeds; and [6] issues and matters reasonably related to any of the foregoing issues.

2016 Settlement at 5:5-11.[3]

In September 2017, the bankruptcy court entered its order confirming Calkins' chapter 11 plan ("Plan Confirmation Order"). It modified and restated limited portions of the 2016 Settlement. Of particular note, it specified "the failure to properly request arbitration within the foregoing time limits shall constitute a full and final waiver of the right to arbitrate as provided *and limited* under Paragraph 6" of the 2016 Settlement. Plan Confirmation Order at 19:24-27 (emphasis added).

## C.     The arbitration and the arbitration award.

The arbitration was held over two days in early May 2018. The arbitrator then rendered his findings and determined the seven Reserved Issues. First, the arbitrator found that the 2011 Settlement was enforceable. He then enforced or declared moot specific terms of that settlement as set forth in detail in his award.

Second, the arbitrator found that, in 2008, SCA duly merged into and changed its name to SCC. As the arbitrator put it, "SCC is SCA pursuant to

---

[3] The 2016 Settlement also identified a seventh issue, requiring the arbitrator to identify the prevailing party and to determine "whether to award fees and costs for the arbitration process to be paid from the Sale Proceeds."

the Restated Articles of Organization filed by SCA in 2008." The arbitrator further found that, under the terms of the Trust, SCC became the successor trustee for the Trust in 2008 when SCC became SCA's corporate successor. The arbitrator therefore concluded that SCC had authority as the successor trustee to enter into the 2011 Settlement with Calkins.

Third, the arbitrator found that, under California law, Calkins was ineligible to serve as trustee. Alternately, the arbitrator found that Calkins knowingly and intentionally waived his right under the 2011 Settlement to serve as trustee of the Trust by refusing to accept the appointment as trustee. The arbitrator accordingly concluded that SCC should continue to serve as trustee of the Trust.

Fourth, in accordance with the 2011 Settlement, the arbitrator directed that the Sale Proceeds (if any) should be paid to the Trust for distribution under the terms of the Trust and the arbitration award. The arbitrator further observed that the Sale Proceeds were "[t]he only known remaining funds at issue."

Fifth, the arbitrator identified SCC as the prevailing party in the arbitration and awarded it reimbursement of the following arbitration-related expenses: $26,938.50 for attorney's fees, $68.57 for costs, $6,735.00 for arbitrator's fees, and $2,122.64 for other arbitration expenses. He additionally awarded SCC the following bankruptcy-related expenses: attorney's fees of $29,433.50 and costs of $996.68. As the parties have

8

acknowledged, the amount of the arbitration award exceeds the amount of the Sale Proceeds and the remaining amount available in the Trust for distribution.

## D.    Post-arbitration activity in the bankruptcy court.

The ink was hardly dry on the arbitrator's July 2018 final award when skirmishing in the bankruptcy court resumed. This time the fight focused on the 2016 Settlement and the arbitration award. At the direction of the bankruptcy court, SCC condensed the parties' post-arbitration disputes into a single motion, which SCC filed on December 3, 2018. The motion sought to enforce the 2016 Settlement, the 2017 Plan Confirmation Order, and the 2018 arbitration award ("Motion To Enforce"). As SCC put it, these three documents resolved all issues between the parties. SCC also contended that the court should find that the arbitrator determined all of the Reserved Issues, did not exceed the scope of his authority, and hence the arbitration award should be confirmed.[4]

In January 2019, Calkins responded to SCC's Motion To Enforce. He

---

[4] SCC's Motion To Enforce additionally included requests for two minor clerical corrections to the arbitration award, for sanctions against Calkins, and for a vexatious litigant order. The bankruptcy court denied the sanctions motion but granted the request for clerical corrections and imposed pre-filing review restrictions on any further bankruptcy court papers Calkins attempted to file pertaining to SCC. Calkins' notice of appeal referenced these additional rulings, but he did not address them at all in his appeal brief. Accordingly, we need not further address them. *See Christian Legal Soc'y Chapter of Univ. Of Cal. v. Wu*, 626 F.3d 483, 487–88 (9th Cir. 2010); *Brownfield v. City of Yakima*, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010).

principally contended that the 2016 Settlement did not limit the issues reserved for arbitration. According to Calkins, any and all claims, disputes, and issues arising from his relationship with SCA, SCC, and their affiliates should have been part of the issues arbitrated. As he reasoned, the arbitrator's failure to address any and all issues established that he manifestly disregarded the law, deviated from the 2016 Settlement, exceeded his arbitrator's powers, and engaged in partiality, collusion, fraud, and corruption.

Aside from his grievances about excluded issues that should have been arbitrated, Calkins complained that he was not given his fair share of time to arbitrate. He further asserted that the arbitrator contravened the terms of the 2016 Settlement by awarding SCC bankruptcy-related fees and costs, arbitration-related fees and costs, and by shifting the prevailing party's allocated share of the arbitrator's fees and expenses. Calkins claimed that all of this "misconduct" constituted grounds for vacating the arbitration award.

At the January 24, 2019 hearing on the Motion To Enforce, the bankruptcy court determined that the arbitrator duly decided all of the Reserved Issues and that his decision to refrain from arbitrating any probate-related issues, except for those specifically covered by the Reserved Issues, did not contravene the 2016 Settlement. The court, in fact, reiterated several times that, in its view, the arbitrator covered all of the

10

issues he needed to cover as specified in the 2016 Settlement and that all other issues not covered were consensually resolved pursuant to the terms of the 2016 Settlement. The court also addressed Calkins' other allegations of arbitration misconduct and determined that they were factually unsupported, or did not rise to the level of corruption, fraud, evident partiality, or any other ground for vacatur.

The bankruptcy court entered an order granting the Motion To Enforce and confirming the arbitration award. The bankruptcy court specifically found that the arbitrator had "dealt with all issues and entered all relief required" by the court's prior orders. It also found that the arbitrator had "properly exercised his judgment in determining the scope of his inquiry and in the rulings that he made as reflected in the Final Award." Moreover, the court both ordered and directed Calkins "that his dispute with SCC is done and it is over and, to the extent that there are additional filings by Mr. Calkins or by Mrs. Calkins, that this Court will likely consider them to be vexatious and possible consider such pleadings to be filed in bad faith, except in the event that his filings are in response to motions or appeals filed by SCC."

On the heels of the entry of the order granting the Motion To Enforce, Calkins filed two objections and a response – all on May 29, 2019. Shortly thereafter, on May 31, 2019, the bankruptcy court entered an additional order. The May 31, 2019 order treated the two May 29, 2019 objections and

the May 29, 2019 response as motions under Rules 9023 and 9024, denied those motions, and found that the orders as prepared by SCC were entirely consistent with the court's oral rulings. The court further found that Calkins was afforded ample due process because SCC made efforts over an extended period of time to work with Calkins on the form of the orders, but Calkins did not reasonably cooperate in the preparation of the orders in a form consistent with the court's oral rulings.

Calkins timely appealed the order granting the Motion To Enforce and the May 31, 2019 order.[5]

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court commit reversible error when it granted SCC's Motion To Enforce and confirmed the arbitration award?

## STANDARD OF REVIEW

Our review of the enforcement order requires us to consider the

---

[5] Calkins additionally filed a motion for new trial on May 30, 2019. The bankruptcy court entered an order denying the new trial motion on August 22, 2019. Calkins filed a separate appeal from the denial of the new trial motion as well as a motion for reconsideration of that denial. This Panel denied consolidation of this later appeal with the appeal from the bankruptcy court's May 2019 orders. Thus, the August 2019 denial of the new trial motion is beyond the scope of this appeal. However, given that the order denying the new trial motion was not entered until August 22, 2019, the June 19, 2019 appeal from the May 2019 orders was timely filed, per Rule 8002(b).

bankruptcy court's interpretation of the 2016 Settlement. The interpretation of a settlement agreement, like the construction of any contract, generally is subject to de novo review. *Pekarsky v. Ariyoshi*, 695 F.2d 352, 354 & n.1 (9th Cir. 1982); *Kittitas Reclamation Dist. v. Sunnyside Valley Irrigation Dist.*, 626 F.2d 95, 98 (9th Cir. 1980).[6]

We also review de novo the confirmation of the arbitration award. *New Regency Prods., Inc. v. Nippon Herald Films, Inc.*, 501 F.3d 1101, 1105 (9th Cir. 2007) (citing *Poweragent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1193 (9th Cir. 2004)).

## DISCUSSION

**A.    The bankruptcy court did not err in confirming the arbitrator's decision regarding the scope of the arbitration.**

Despite his numerous grievances, Calkins only develops one genuine issue in his appeal brief. He argues in myriad ways that the arbitrator and

---

[6] The bankruptcy court approved the 2016 Settlement later modified and partially restated it in its Plan Confirmation Order. By doing so, the 2016 Settlement arguably became part of the Plan Confirmation Order. We give significant deference to the bankruptcy court's interpretations of its own orders. *Rosales v. Wallace (In re Wallace)*, 490 B.R. 898, 906 (9th Cir. BAP 2013) (citing *Hallett v. Morgan*, 296 F.3d 732, 739–40 (9th Cir. 2002)). On the other hand, we must review de novo the bankruptcy court's interpretation of unambiguous contractual provisions. *See Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 909 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010); *see also L.K. Comstock & Co. v. United Eng'rs & Constructors Inc.*, 880 F.2d 219, 221 (9th Cir. 1989) ("when a district court interprets a contract without using extrinsic evidence, the standard of review is de novo"); *Cannon v. Haw. Corp. (In re Haw. Corp.)*, 796 F.2d 1139, 1143 (9th Cir. 1986) (same). We have conducted a de novo review of the 2016 Settlement and have reached the exact same conclusion as the bankruptcy court. The application here of a more deferential standard would not yield a different result.

13

the bankruptcy court deviated from the 2016 Settlement by not addressing the "probate issues," which has caused these issues to be "orphaned" without resolution. Calkins never specifically has identified what he means by "probate issues" or "all issues." He failed to do this in the bankruptcy court, and he has failed to do this on appeal.

Calkins asserts that the 2016 Settlement reserved all issues for arbitration. He posits that this was made clear by the language in paragraph 6.c. of the 2016 Settlement reserving for arbitration "issues and matters reasonably related to" one of the five specifically enumerated Reserved Issues immediately preceding the "reasonably related to" language.[7] He additionally relies on the recital referring to "[f]urther disputes between the parties," including issues in the California Probate Action, as evidence that the probate issues were subject to arbitration. *See* 2016 Settlement at recital B. In short, Calkins argues that both the arbitrator and the bankruptcy court erroneously interpreted the scope of the 2016 Settlement.

The arbitrator first rejected Calkins' argument that the probate issues were part of the arbitration.[8] He reasoned that any probate issues were not

---

[7] But he never coherently explains why any of these so-called orphaned issues are reasonably related to the five specifically enumerated Reserved Issues set forth in the 2016 Settlement. Nor are we aware of any such explanation.

[8] The question of whether the arbitrator or the court should decide arbitrability

(continued...)

included within the five identified Reserved Issues listed in paragraph 6.c. of the 2016 Settlement and were not reasonably related to those Reserved Issues. The bankruptcy court agreed with the arbitrator's reading of paragraph 6.c. and the exclusion of the probate issues from the arbitration. Construing the 2016 Settlement, the bankruptcy court further found that the parties had settled all matters except those enumerated matters reserved for arbitration. Accordingly, the ultimate issue in this appeal is whether the bankruptcy court erred when it construed the 2016 Settlement Agreement and held that the probate issues were not reserved for arbitration and had been settled.

Like other contracts, bankruptcy settlement agreements are construed under state contract law. *In re Haw. Corp.*, 796 F.2d at 1143; *Commercial Paper*

---

[8](...continued)
issues is a complicated one that neither party addressed in any detail. Both parties agree that *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995), governs the arbitration. According to *Kaplan*, when the parties clearly and unmistakably have agreed that the arbitrator has the power to decide arbitrability issues, that decision is subject to the same extremely deferential standards applicable to the arbitrator's merits decisions. *Id.* at 943-45. And when the parties agree to abide by the commercial rules of the American Arbitration Association ("AAA Rules"), this constitutes "clear and unmistakable" evidence for the arbitrator to decide arbitrability. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Brake Masters Sys., Inc. v. Gabbay*, 78 P.3d 1081, 1088 (Ariz. Ct. App. 2003). Because the parties executed an Agreement To Private Arbitration, which specifically provided that the arbitration would be conducted in accordance with the AAA Rules, the arbitrator had the primary power to resolve the arbitrability issue. Its decision regarding the scope of issues to be arbitrated is entitled to significant deference. Pragmatically, however, this issue is immaterial because both the arbitrator and the bankruptcy court agreed that the probate issues were not part of the arbitration.

15

*Holders v. Hine (In re Beverly Hills Bancorp)*, 649 F.2d 1329, 1333 (9th Cir. 1981). When construing an agreement under Arizona law, the court must ascertain and give effect to the parties' manifested intent at the time the contract was made. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1139 (Ariz. 1993); *Sam Levitz Furniture Co. v. Safeway Stores, Inc.*, 464 P.2d 612, 614 (Ariz. 1970). In determining the parties' manifested intent, and whether the contract's language is reasonably susceptible to more than one meaning, the court initially needs to consider any extrinsic evidence offered. *Taylor*, 854 P.2d at 1140. If, after considering any extrinsic evidence offered and the contract's language, the court determines the language is reasonably susceptible to only one meaning, the court must enforce the contract as written. *See UIP Ltd., L.L.C. v. Lincoln Nat'l Life Ins. Co.*, Case No. CV-09-0006-PHX-NVW, 2009 WL 4497233, at *5 (D. Ariz. Nov. 30, 2009) (citing *Long v. City of Glendale*, 93 P.3d 519, 528 (Ariz. Ct. App. 2004)).

Calkins did not attempt to present any extrinsic evidence to support his interpretation of the 2016 Settlement as reserving "all issues" for future resolution. He completely failed to develop the record on this issue and instead solely relied on the 2016 Settlement language. The 2016 Settlement, as a whole, made clear that the document was, in fact, a settlement of all disputes between the parties, except for those expressly reserved in paragraph 6.c. The recitals upon which Calkins relies established that the probate issues were part of matters being settled. While the 2016 Settlement

16

then provides for arbitration, it specifically and expressly limited the matters for arbitration to those identified in paragraph 6.c. This restricted subset necessarily precludes any argument that all the matters being settled were subject to arbitration. Moreover, the Reserved Issues themselves, together with the surrounding language regarding waiver of the right to arbitrate, reflected that the purpose of the arbitration was to determine who should distribute the Sale Proceeds and to whom they should be distributed.

A court must "apply a standard of reasonableness" to the contract's language and must construe it contextually and "in its entirety . . . in such a way that every part is given effect." *Ariz. ex rel. Goddard v. R.J. Reynolds Tobacco Co.*, 75 P.3d 1075, 1078 (Ariz. Ct. App. 2003). Calkins' proffered meaning of the 2016 Settlement makes no sense at all. If the parties' true intent had been to reserve "all issues" and arbitrate them, they did not need to enter into a settlement agreement at all. An arbitration agreement would have sufficed. Nor would there have been any need to include or define the Reserved Issues enumerated in paragraph 6.c. In other words, Calkins' interpretation of the 2016 Settlement would render paragraph 6.c. meaningless. *Chandler Med. Bldg. Partners v. Chandler Dental Grp.*, 855 P.2d 787, 791 (Ariz. Ct. App. 1993) ("the court will not construe one provision in a contract so as to render another provision meaningless.").

In short, the bankruptcy court did not err in ruling that the 2016

17

Settlement resolved all disputes between Calkins and SCC other than the Reserved Issues. Nor did it err by confirming the arbitrator's decision to exclude the probate issues from arbitration.

**B.    The remainder of Calkins' challenges to the arbitration award are without merit.**

Calkins' other arguments on appeal are without merit. An arbitrator's decision is largely beyond attack except for the extremely limited grounds for vacatur stated in the federal Arbitration Act or in Arizona's arbitration laws. *Compare* 9 U.S.C. § 10 *with* A.R.S. § 12-3023. As the Supreme Court generally has observed, arbitrators "have completely free rein to decide the law as well as the facts" and their decisions on the facts and law "are not subject to appellate review." *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 148-49 (1968); *see also New Regency Prods., Inc.*, 501 F.3d at 1105 (same).

In an attempt to establish grounds for vacatur, Calkins mentioned a handful of alleged mistakes in the way the arbitration was conducted. He argues that the arbitrator deviated from the 2016 Settlement, exceeded his authority, colluded with SCC, committed fraud, manifestly disregarded the law, and exhibited evident partiality in favor of SCC. In light of the de novo standard of review applicable to a trial court's decision to confirm or vacate an arbitration award, we have independently reviewed the record presented to the bankruptcy court, and we have found no grounds to

vacate the arbitration award.

Calkins makes mention of one ex parte communication by SCC, remedied within hours, regarding clarification of a deadline for SCC to file a certain paper with the arbitrator. Calkins also mentioned an alleged extension of this deadline by one or two days. Additionally, there was an allegation that SCC enjoyed more arbitration hearing time than Calkins and that Calkins was deprived of two hours of arbitration hearing time. Yet the bankruptcy court found that Calkins rested his presentation and hence voluntarily relinquished his additional two hours. Calkins further contends that, in granting fees and costs to SCC, the arbitrator exceeded a cap on fees set forth in the 2016 Settlement, but we have located no such cap.

At bottom, without any factual development, Calkins claims that these alleged incidents prejudiced his substantial rights, resulted in an unjust arbitration award, and constituted grounds to vacate under 9 U.S.C. § 10, under A.R.S. § 12-3023, or both. Our independent review of the record has located no evidence to support his claims of prejudice, corruption, fraud, collusion, injustice, manifest disregard for the law, or any other potential ground for vacatur.

## CONCLUSION

For all of the foregoing reasons, we AFFIRM the bankruptcy court's order granting SCC's Motion To Enforce the 2016 Settlement and confirming the arbitration award. We also AFFIRM the bankruptcy court's

19

other orders referenced in Calkins' notice of appeal.[9]

[9] On January 23, 2020, SCC filed a motion to strike certain documents attached to Calkins' reply brief. That motion is hereby ORDERED GRANTED. The subject documents were not part of the bankruptcy court record, and Calkins has not persuaded us that there are any legally cognizable grounds for us to consider these documents in the first instance. Also, on May 19, 2020, Calkins filed an "Update on State Court Filings," pursuant to which Calkins claims that SCC's action of seeking and obtaining dismissal of its state court action to confirm the arbitration award violated prior orders staying the state court action. However, in the bankruptcy court's May 23, 2019 order confirming the arbitration award, the bankruptcy court specifically directed SCC to dismiss the state court action. In any event, we will not further consider the Update on State Court Filings because it is beyond the scope of and is not relevant to our disposition of this appeal.